[No. 31308. Department One. July 10, 1950.]

V. Whitworth, *Appellant*, v. Enitai Lumber Company, *Respondent.*[1]

*J. W. Graham*, for appellant.

*B. Franklin Heuston*, for respondent.

[1]Reported in 220 P. (2d) 328.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action for the return of money paid as consideration for an option to purchase a mill after a verdict of the jury for the defendant.

In the early part of 1948, Roy C. Himes and John Shugarts approached the officers of the Enitai Lumber Company with regard to the purchase of its mill. After some preliminary negotiations they met at the mill office, and Mr. Himes gave the company his personal check for five hundred dollars and typed out the following option agreement:

"OPTION TO BUY

"FOR THE SUM OF $500.00, receipt which is hereby acknowledged, we hereby option to sell the full interest of the Enitai Lumber Company, a corporation, to John Shugarts and Roy C. Himes for the full sum of $35000.00, The property is to be full and clear of all indebtedness. The logs in the pond will be bought at price paid by Enitai Lbr. Co., The price of $35000.00 will be paid in the following manner. $24000.00 cash and balance at payments mutually agreed on. Interst will be at ........................... 4 and ½ per cent per annum on unpaid balance.

"The length of this option will be for the period of thirty days from this date. If option is not picked up the *ioption* money will be *forfieted*. Lease on land will be assigned to John Shugarts and Roy Himes. If lease does not provide a for at approxmitely eight years operation the option is to be null and void.

"Dated this 16th day March, 1948.

"[signed] Frank Ward
Pres. Enitai Lbr. Co., a corp.,
[signed] Roy C. Himes
[signed] John Shugarts"

The company was operating on land owned by Fred Hansen and leased to it by him. The lease was for a term of five years from May 1, 1946, and provided: "At the expiration of this the *lesse* will have the first privilege for renewal of this lease for an additional five years." Up to and including the time of the execution of the agreement, the lease had not been exhibited to the proposed purchasers, although its terms had been explained to them.

About ten days later, Mr. Himes came to the mill and asked for the lease held by the company, explaining that the party who was financing him wanted to examine it. Later he came back and said that the lease did not give a definite description and they were unable to determine the exact location of the mill. In addition, about this time Himes indicated that he wanted more land, so the company had a survey made, which included all of the land desired by him. All of the land involved was owned by Hansen.

After the survey, some of the officers of the company accompanied Himes and Shugarts to see Hansen. He was told about the proposed deal, and asked if he had any objections to assigning the lease to the purchasers. He said that he had no objections. Then Himes asked him if he could have more land, in addition to that provided in the original lease. He told Himes that it would be all right, but that he would have to have more rental. No definite agreement was made at that time and Mr. Hansen testified that since that time none of the parties have discussed the transfer with him.

About this time, Himes asked for an extension of thirty days on his option agreement, which was granted to him. Prior to the expiration of the sixty day period, Himes went to the company and said that they were ready to close the deal. At that time, Hansen was seriously ill and could see no one. Upon his recovery, the parties were never able to get together concerning the land to be included in the lease. Himes testified that, if the land description as disclosed by the survey had been incorporated in the lease and the lease had been extended for an additional five years, they would have been satisfied; that they were very anxious to complete the deal; that there was no uncertainty at all as to the land area. On the other hand, Mr. Ellison, the manager, who conducted most of the negotiations for the company, testified that every time Himes came in and asked if they had the new lease ready, he (Ellison) would ask him what he wanted in the lease, so they could have it drawn up, and Himes would always evade the question; that they never could get him to definitely tell them just what he wanted included in the lease.

Some matters are undisputed. Himes and Shugarts never tendered the purchase price (although they said they were ready to close the deal). The mill company never had prepared a contract of purchase or a lease providing for approximately eight years' operation (although they testified that they were ready and willing to do so).

In October, 1948, the directors of the company declared the five hundred dollars forfeited, and so notified Himes. The directors'. action was approved by the stockholders in their December meeting, and they ordered that the money be credited to the company. Himes never demanded a return of the money. March 17, 1949, he assigned his claim to appellant, and this action was commenced March 27, 1949.

██ ██ An option to purchase property is a contract wherein the owner, in return for a valuable consideration, agrees with another person that the latter shall have the privilege of buying the property within a specified time upon the terms and conditions expressed in the option. If no consideration passes, the transaction resolves itself into a mere offer which may be withdrawn by the optionor at any time before acceptance by the optionee. But when supported by a consideration, as in the case at bar, the execution of the agreement results in a contract binding upon the optionor which may not be withdrawn by him during the time set forth therein.

██ In this respect, the option contract is unilateral, for, while it binds the optioner to sell, it does not require the optionee to purchase but gives him the right, within the time limited, to elect to purchase, or, to state it another way, to exercise his option. Such election must be unconditional in that it cannot vary the terms of the option, and, if required by the option, must be accompanied by payment or tender of the price. If the optionee does so elect, the optionor is then required to perform in accordance with the terms of the option. On the other hand, if the optionee fails to elect to purchase within the time specified, all of his rights under the option contract cease, and, in addition thereto, he forfeits the consideration he paid for the entering into of the

option contract. 55 Am. Jur. 492, Vendor and Purchaser, § 27; James on Option Contracts, 2-7, § 101, § 102; *Hopkins v. Barlin*, 31 Wn. (2d) 260, 196 P. (2d) 347.

Did Himes and Shugarts elect to purchase? Himes, prior to the expiration of the sixty-day period, went to the company and said that they were ready to close the deal. This was not an election to purchase under the terms of the option contract of March 16th. Himes had already indicated that they would not take under this contract for the reason that they desired more land than was covered by the lease which the company then held. The company not only expressed its willingness for them to obtain more land, but was ready to assist them in so doing. Various meetings were held for the purpose of ascertaining just what was wanted in order that a modification of the original contract could be consummated. However, Himes and Shugarts could not decide what they wanted in the lease, and always evaded the issue. Thus, there never was a meeting of the minds of the parties on a modified contract. In the meantime, the optionees, through no fault or neglect of the optionor, permitted their rights under the option contract to expire. Their time ran out with no election on their part to purchase. The jury, therefore, was justified in concluding from the evidence that the actions of Himes and Shugarts never constituted an election, and that, as a result, respondent company was entitled to retain the five hundred dollars consideration.

The judgment is affirmed.

SIMPSON, C. J., BEALS, GRADY, and DONWORTH, JJ., concur.