**G. Sandra FISHER, Plaintiff,**

v.

**Graham ELMORE, Executor of the Estate of Alma Belch Bryant, et al., Defendants.**

No. 83–62–CIV–3.

United States District Court,
E.D. North Carolina,
Fayetteville Division.

May 22, 1985.

**124**

James B. Craven, III, Durham, N.C., for plaintiff.

Miles B. Fowler, Clinton, N.C., Rodney A. Guthrie, Fayetteville, N.C., for defendants.

## ORDER OF SUMMARY JUDGMENT

TERRENCE WILLIAM BOYLE, District Judge.

This cause comes on to be heard before the undersigned United States District Judge upon the cross-motions of the parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff has objected to a memorandum and recommendation by the United States Magistrate recommending that summary judgment be allowed for the defendants. The court has reviewed the entire record and for the following reasons sustains the plaintiff's objection to the proposed order of August 22, 1984 and allows summary judgment for the plaintiff.

The magistrate's order of August 22, 1984 correctly sets out the undisputed material facts in this case. To briefly review those facts, this case is brought by the plaintiff on diversity jurisdiction in this court. Plaintiff, a devisee under the will of Alma Belch Bryant, sues the executor of the will, Graham Elmore, and the Trustees of the State Baptist Convention of North Carolina, Inc., who are the residuary legatees of the will. The dispute arises over proceeds from the sale of timber which are now held by the Executor, pending resolution of the contest between these two beneficiaries of the will.

Prior to her death on February 27, 1983, Alma Bryant owned a tract of timberland in Sampson County, North Carolina. On February 22, 1983, Mr. Elmore, as power of attorney for Mrs. Bryant, signed a timber purchase and sales agreement with Flowers Timber and Land Company, Inc., (Flowers). By the terms of this agreement, Flowers could cut the timber on a 40.38 acre tract of land until September 1, 1985. Depending upon the type and amount of timber actually cut, Flowers would pay a unit price for the various kinds of timber as set out in the agreement. There is no evidence that any payment was made prior to the actual cutting. The express language of the agreement provides that no payment was due until the timber was cut. Then payment was due on a weekly basis according to the cut.

Following Mrs. Bryant's death Flowers commenced cutting and thereafter, during March and April, 1983, paid $17,747.82 to Mr. Elmore as executor. He is holding these funds together with accrued interest, pending the determination of this action.

■ This court sitting in diversity jurisdiction must apply the substantive law of North Carolina. North Carolina General Statutes § 25–2–107(2) treats this agreement as a contract for the sale of goods. As such title passes when the goods were identified to the contract, the seller having already completed her performance, N.C. G.S. 25–2–401, 25–2–501. This court determines, that as a matter of law, the timber purchase and sales agreement, when read in its entirety, did not identify the goods at the time of the contract, February 22, 1983, but explicitly left the identification of these goods to occur at such time as the buyer entered, cut, harvested and removed the pulp wood or logs prior to September 1, 1985.

The provisions of North Carolina General Statute 25–2–501(1) determine the manner of identification. Under the undisputed facts in this case, the buyer had to reduce the subject goods to his possession by cutting the timber before any payment was

due. The buyer was under no compulsion to cut the first log nor was the buyer under any compulsion to cut any particular type of log. The buyer had the right to clear cut all of the standing timber including the pulpwood, hardwood and saw timber but until such time as this right was exercised, the seller had no entitlement to payment. If the buyer was delinquent in any payment, the contract could be immediately terminated and the buyer would have no further rights to continue cutting the timber. It is manifest that the buyer had to select the timber and reduce it to its possession before any obligation arose to pay the seller and this event was the identification contemplated by the parties in the contract which, by operation of law, determined when title passed pursuant to N.C. G.S. 25–2–401.

The comments to N.C.G.S. 2–501 plainly state that lumber or growing timber is not a crop within the meaning of sub-paragraph (c) of that section and the comments further state that where the "buyer (has the power) to select the goods" this is an explicit agreement which displaces the rules of paragraphs (a), (b) and (c) of N.C. G.S. 25–2–501(1).

*Gillispie v. Great Atlantic & Pacific Tea Co.*, 14 N.C.App. 1, 187 S.E.2d 441 (1972) appears to be the leading North Carolina authority on interpretation of N.C. G.S. § 25–2–401(2). The holding in that case is authoritative for this court. The plaintiff in *Gillispie* was a purchaser of soft drinks in a grocery store. The court held that under the UCC, the time of payment was not determinative of when a sale takes place. A completed delivery by the seller is sufficient to consummate the sale under N.C.G.S. 25–2–401(2).

The court went on to state at page 6, 187 S.E.2d 441, *supra*, "The presence of the drinks on the shelves in the defendant's self-service store constituted an offer for sale and delivery at a stated price. If plaintiff took the drinks into his possession with the intention of paying for them at the cashier's counter, there was no further act of delivery necessary on the part of the seller. All that remained was for the plaintiff to pay for the drinks, an act delayed until he reached the cashier's counter primarily for the convenience of the seller."

Applying that very clear reasoning to the facts at hand, we see that the plaintiff's decedent, by entering into the timber purchase and sales agreement with Flowers in effect put the "drinks on the shelves". At this point in the contractual relationship Mrs. Bryant, as seller, had agreed that all of the standing timber on the described parcel of land was for sale and it was for sale "at a stated price" just as the drinks in the *Gillispie* case were marked with a price on the shelf. However, just as the patron in the store must lift the drink or drinks off the shelf and reduce them to his possession before the title was exchanged, so here, Flowers had to "enter, cut, and harvest" the logs before they were reduced to its possession and title was thereby effected. At that point all that remained for Flowers to do was to pay for the logs just as the patron in *Gillispie* had to pay for the drinks when he reached the cashier's counter.

To suggest that Flowers had title to all of the growing timber prior to entering onto the property for cutting or harvesting any of it under these facts, would be the same as suggesting that the patron in the self-service store in *Gillispie* had title to *all* of the drinks on the shelves simply because he had the capacity to buy them all and they were all offered for sale.

█ In summary, title to the timber did not pass from Alma Belch Bryant prior to her death. Plaintiff by devise of this property had title to the standing timber when it was severed by Flowers. Therefore, the plaintiff is entitled to the proceeds of this sale. Until the buyer entered upon the land, and cut and removed the timber purchased by Flowers could not be identified. Without such identification to the contract title could not pass.

For the reasons set forth herein summary judgment is allowed plaintiff for $17,-747.82 against the defendant executor together with such accrued interest as may

have been earned during the pendency of this action.

The magistrate entered a memorandum and recommendation on September 20, 1984 disbursing certain farm rents and other proceeds held by the estate. This order has been accepted by the parties without objection and this court hereby adopts the order and confirms it accordingly.