[No. 60109-7. En Banc. October 7, 1993.]

GEORGE SYROVY, ET AL, *Respondents*, v. ALPINE RESOURCES, INC., ET AL, *Petitioners*.

*Golden & Knowlton, P.S.,* by *Albert J. Golden,* for petitioners.

*Michael V. Hubbard* and *Hubbard Law Office,* for respondents.

DURHAM, J. — George Syrovy and the George Syrovy Trust (Syrovy) contracted to sell timber to Alpine Resources, Inc. (Alpine). Syrovy claimed that Alpine breached its contractual obligations when it failed to pay the total contract price. The trial court granted Syrovy's request for summary judgment and the Court of Appeals affirmed. We affirm in all respects.

On March 19, 1988, Syrovy entered into a contract involving the sale of timber, known as a "Timber Purchase Agreement", with Alpine. The agreement was signed by George Syrovy (seller) and by Ken Reoh for Alpine (buyer). The contract provides that "[Syrovy] agrees to sell, and [Alpine] agrees to purchase all the merchantable timber (12" DBH and larger) produced during the term hereof from the lands described below". Clerk's Papers (CP), at 3. The term of the agreement was for 2 years, from April 15, 1988, to April 15, 1990. The contract contains a clause stating that time is of the essence. Under this clause, "[t]he Buyer will commence withactive [*sic*] harvesting on said land as soon as possible after the execution of this contract and will carry on a continuous operation to this end so that the road system and harvesting will be completed and delivered within the term of this contract." CP, at 4.

The timber sold under the contract was to be "produced by the buyer" from portions of sections 24, 26 and 35 of the seller's land. The contract states that "[t]he total purchase price for all the commercial timber on the above legally described property shall be ONE HUNDRED & FORTY THOUSAND DOLLARS ($140,000.00)." CP, at 3. The purchase price was to be paid as follows: (1) $1,000 earnest money upon signing a forest practice application and the contract itself; (2) $39,000 on May 31, 1988, "or sooner should Buyer elect to commence with harvesting" the south half of section 35; (3)

$50,000 "[p]rior to commencing with harvesting" the north half of section 35, and section 26; and (4) $50,000 "[p]rior to commencing with harvesting Section 24." CP, at 3.

On June 1, 1988, the parties entered into a "Supplement to Timber Purchase Agreement and Receipt of Payment". CP, at 13. The supplement refers to the original agreement, characterizing it as "a Timber Purchase Agreement for all the commercial timber on the following legally described property [sections 24, 26, and 35]". CP, at 13. The document then changes the payment schedule so that the north half of section 35 and section 26 are to be logged first, with a commensurate payment of $50,000.[1] In accord with the supplement, Alpine remitted $50,000 to Syrovy upon the signing of that agreement. According to the supplement, this payment granted Alpine "the right to enter onto and harvest all the commercial timber" in the north half of section 35 and section 26.

Following this supplemental agreement, Alpine began harvesting operations in sections 35 and 26. Alpine continued timber production until October 1989. It alleges that further access to the harvesting area was precluded by a combination of inclement weather and the start of hunting season. Alpine also faced other difficulties in harvesting the timber, including the death of one of its employees. Alpine received $331,517.35 for the timber it harvested from Syrovy's land, but there is no indication as to the costs Alpine incurred in harvesting this timber. Alpine made no further payments on the contract, nor did it log any other sections. After the contract period expired, Syrovy sold timber from the same areas covered by the Alpine contract for $45,475.

Syrovy filed suit against Alpine on July 18, 1990, alleging breach of contract and seeking to recover the balance of the contract price ($90,000). Alpine denied that it had a contrac-

---

[1]The earnest money paid pursuant to the March 19, 1988, agreement was apparently returned to Alpine after the supplemental contract changed the order of harvest. The revised payment schedule in the supplemental contract makes no reference to earnest money.

tual obligation to pay these moneys, and it asserted impossibility of performance as an affirmative defense. Alpine also claimed that any damages should be offset by the amount Syrovy received for reselling the timber. On October 11, 1991, Syrovy moved for summary judgment.[2] Finding that there were no material issues of fact, the trial court granted Syrovy's motion. It held that the two parties had "entered into a timber purchase agreement, which had been drafted by Ken Reoh, for all the merchantable timber (12" DBH and larger) produced by the buyer from described parcels of seller's land during the agreement's two[-]year term". CP, at 187. The trial court further stated that "[t]he purchase price for the timber produced was $140,000.00 of which $50,000.00 was paid." CP, at 187. As such, the trial court awarded Syrovy $90,000, plus interest, fees and costs. In making this ruling, the judge relied exclusively on the language of the contract, finding that it was an unambiguous document that was "not subject to parol evidence or the intent of the parties". Partial Report of Proceedings, at 21-22 (Nov. 5, 1991).

The Court of Appeals affirmed. After rejecting Alpine's contention that the contract was ambiguous, the appellate court held that the timber purchase agreement was not a series of options, but an installment contract. *Syrovy v. Alpine Resources, Inc.*, 68 Wn. App. 35, 41, 841 P.2d 1279 (1992). It further held that impossibility of performance was not available as a defense to the contract, and that it was not necessary to offset Syrovy's damages by the amount he received on resale of the timber; neither argument raised issues of fact precluding summary judgment. 68 Wn. App. at 41-44. We granted Alpine's petition for review, and now affirm.[3]

---

[2]Syrovy had originally moved for summary judgment on May 13, 1991. The trial court granted this motion for summary judgment, but then withdrew it following a motion for reconsideration.

[3]When reviewing an order granting summary judgment, the appellate court engages in the same inquiry as the trial court. *Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 565, 817 P.2d 841 (1991). An appellate court will affirm summary judgment if "there is no genuine issue as to any material fact", and "the moving party is

OPTION OR INSTALLMENT CONTRACT

██ Alpine claims that the timber purchase agreement falls within the definition of an "option contract" found in *Whitworth v. Enitai Lumber Co.*, 36 Wn.2d 767, 770-71, 220 P.2d 328 (1950). In that case, this court stated that:

> An option to purchase property is a contract wherein the owner, in return for a valuable consideration, agrees with another person that the latter shall have the privilege of buying the property within a specified time upon the terms and conditions expressed in the option. If no consideration passes, the transaction resolves itself into a mere offer which may be withdrawn by the optionor at any time before acceptance by the optionee. But when supported by a consideration, as in the case at bar, the execution of the agreement results in a contract binding upon the optionor which may not be withdrawn by him during the time set forth therein.

*Whitworth*, 36 Wn.2d at 770. Although this matter is governed by the provisions of the Uniform Commercial Code (U.C.C.),[4] RCW Title 62A, the common law definition of "option contract" contained in *Whitworth* is controlling because the U.C.C. does not address option contracts. *See* RCW 62A.1-103 ("Unless displaced by the particular provisions of this Title, the principles of law and equity... shall supplement its provisions."); *Gorge Lumber Co. v. Brazier Lumber Co.*, 6 Wn. App. 327, 334, 493 P.2d 782 (1972) (common law contract principles not specifically replaced by the U.C.C. are adopted by it).

To support its contention that the timber purchase agreement and supplement create an option contract, Alpine first

---

entitled to a judgment as a matter of law". CR 56(c). All facts and inferences are to be considered in the light most favorable to the non-moving party. *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 351, 779 P.2d 697 (1989). On summary judgment, all questions of law are reviewed de novo. *See Hoffer v. State*, 110 Wn.2d 415, 755 P.2d 781 (1988), *aff'd on rehearing*, 113 Wn.2d 148, 776 P.2d 963 (1989).

[4]U.C.C. § 2-107(2) provides that:

"A contract for the sale apart from the land ... of timber to be cut is a contract for the sale of goods within this Article whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance." RCW 62A.2-107(2).

claims that it "gave a valuable consideration, $1,000 for the option". Petition for Review, at 8. This argument is spurious. The contract, in clear and plain language, states that the $1,000 payment was for earnest money. Moreover, the supplement to the original agreement deletes the provision for earnest money altogether, and the record shows that this money was returned to Alpine.

■ Next, Alpine argues that the language of the contract and supplement making payments due prior to commencing with harvesting creates an option.[5] The contractual language Alpine relies upon is inapposite. It is more fairly read to link the timing of the payment to Alpine's progress in harvesting. Most likely, Syrovy did not want timber removed from his land prior to the receipt of payment. This does not mean, however, that payment was optional. As Syrovy points out, "surely a contract with provisions for payments at installment points in the overall job does not create mere options in favor of the buyer". Brief of Respondent, at 5.

■ Likewise, Alpine's argument that the supplement provision granting it "the right to enter onto and harvest all the commercial timber" somehow creates an option fails to persuade. If the parties had wanted to make logging of the various sections optional, they would have used specific language to that effect. As the Court of Appeals pointed out, nowhere in either the original contract or the supplement is the term "option" or the word "choice" utilized. 68 Wn. App. at 41. If anything, the "time is of the essence" provision mandating that "harvesting will be completed and delivered within the term of this contract [2 years]" suggests that

---

[5]Alpine's argument, which follows, is highly questionable:

"The language found in part IV of the [timber purchase agreement] originally provided for payment of $39,000 '. . . should buyer elect to commence with harvesting . . .' The word 'elect' is found in both the [timber purchase agreement] and the decision in *Whitworth*." Petition for Review, at 8. The material Alpine *omits* from the quote suggests an entirely different meaning. In actuality, it reads that the money is due on "May 31, 1988, or sooner should Buyer elect to commence with harvesting". CP, at 3.

Alpine's performance of its contractual obligations was not a matter of choice, but a requirement.[6]

The nature of the timber purchase agreement is clear from its language; it creates an arrangement where payment is to occur in timed installments. For these payments, Alpine agreed to purchase all merchantable timber it could harvest during the 2-year period. As we have frequently stated, "[i]t is the duty of the court to declare the meaning of what is written, and not what was intended to be written." *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990) (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 349, 147 P.2d 310 (1944)). "Where contractual language is unambiguous courts will not read ambiguity into the contract."[7] *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 917, 468 P.2d 666 (1970). Here, the contract creates an installment schedule where payment is mandatory, rather than optional.[8]

## DAMAGES

Both Syrovy and Alpine agree that this is an "Action for the price" under U.C.C. § 2-709. In relevant part, this provision provides that:

---

[6]Alpine Resources cites *Fisher v. Elmore*, 610 F. Supp. 123 (E.D.N.C. 1985), *aff'd*, 802 F.2d 771 (4th Cir. 1986) at length for the proposition that it entered into an option agreement. The contractual arrangement in *Fisher*, however, was quite different. As our Court of Appeals pointed out, payment in *Fisher* was dependent upon the quantity of timber the buyer harvested, it was not due until harvesting was completed, and the buyer had the choice not to cut any logs at all. *Syrovy*, 68 Wn. App. at 41.

[7]The question of whether a contract is ambiguous is one of law. *Shower v. Fischer*, 47 Wn. App. 720, 726, 737 P.2d 291 (1987). A contract is ambiguous when it is "[c]apable of being understood in either of two or more possible senses". *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 116, 441 P.2d 868 (1966) (quoting *Webster's New International Dictionary* (2d ed.)).

[8]Alpine Resources also claims that the contract is ambiguous due to the alternating uses of the terms "produce" and "harvest", as well as the terms "merchantable" and "commercial". Alpine fails to demonstrate how this inconsistency affects the contract's meaning, or the outcome in this case. Moreover, the above terms appear to be synonymous.

(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

RCW 62A.2-709(1).

██ Relying on U.C.C. § 2-709, both the trial court and appellate court refused to offset the money Syrovy received for the resale of timber against the money due under the contract. The Court of Appeals provided the following reasoning:

Alpine accepted the timber it produced during the 2-year period called for in the contract, but failed to pay the contract price. Mr. Syrovy is entitled to recover the $90,000 still due under the contract for the timber produced. He is not obligated to credit Alpine for any timber he resold. *Any timber left at the end of the 2-year contract term was not timber he agreed to sell or Alpine agreed to buy.*

(Italics ours.) *Syrovy,* 68 Wn. App. at 43.

We agree with this reasoning. The contract is for all the merchantable timber (12" DBH and larger) produced during the term of the agreement by the buyer. Under the contract, Alpine is granted "the right to enter onto and harvest all the commercial timber" it can during the contract's 2-year term. CP, at 13. The quantity term in the contract — all the commercial timber Alpine can cut within 2 years — is sufficient to satisfy the statute of frauds. *See Hankins v. American Pac. Sales Corp.,* 7 Wn. App. 316, 319, 499 P.2d 214 (1972) (quantity need not be "precisely stated").

Because Alpine bought only all the trees it could harvest in 2 years, it is not entitled to have the balance of the contract price offset by the amount Syrovy received for "resale" of the timber. Alpine necessarily received all the timber that it could cut down within a 2-year period. This timber was accepted prior to breach. As such, U.C.C. § 2-709 allows Syrovy to recover "the price of goods accepted", which in this case is the

balance of the contract price. Alpine is not entitled to the proceeds of the resale because the trees which Syrovy sold were not part of the contract. Thus, we affirm.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.