
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SPOKANE SLAVIC BAPTIST CHURCH, | ) ) ) | No. 36565-4-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| JOE TRENCHUK, individually and on behalf of his marital community dba GREEN GLOBAL ENTERPRISES, LLC, JOE TRENCHUK TRUST, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellant, | ) ) | |
| IVAN KRIGER, individually and on behalf of his marital community dba GREEN GLOBAL and GREEN GLOBAL ENTERPRISES, LLC, and GREEN GLOBAL ENTERPRISES, LLC, an inactive Washington limited liability company, | ) ) ) ) ) ) ) ) | |
| Defendant. | ) | |

LAWRENCE-BERREY, J. — Joe Trenchuk appeals the trial court's order granting summary judgment in favor of Spokane Slavic Baptist Church. He argues there are several genuine issues of material fact that preclude summary judgment. We disagree and affirm.

FACTS

Joe Trenchuk and Ivan Kriger are co-owners of Green Global Enterprises, LLC (Green Global). On February 14, 2014, Green Global agreed to acquire the old Fred Meyer building, and Spokane Slavic Baptist Church (the Church) agreed to purchase it from Green Global for $2,500,000. The parties agreed that the Church would pay Green Global the purchase price over a period of 25 years at 5 percent interest per year.

From March 20 through May 6, Kriger sent a series of e-mails to the Church. The e-mails generally requested the Church to quickly pay $250,000 to Kennedy Funding. One e-mail referred to the $250,000 as "loan fees." Clerk's Papers (CP) at 239. The e-mails explained that the $250,000 was to facilitate a $21 million loan Kennedy Funding agreed to make to Green Global, which, in part, would allow Green Global to obtain the old Fred Meyer building. The Church refused to pay $250,000 to facilitate Green Global's loan with Kennedy Funding.

The parties reached an agreement on May 15, 2014, memorialized by the following deposit agreement:

Agreement Letter with Joe Trenchuk Trust

Spokane Slavic Baptist Church is depositing $250,000.00 (Two Hundred Fifty Thousand) to Joe Trenchuk Trust account for the purpose of obtaining the loan for the closing [of] the old building of Fred Meyer located at 555 E. Francis Ave. Spokane, Wa.

2

       If the old building of Fred Meyer is not purchased by Spokane Slavic
       Baptist Church by June 15, 2014, the $250,000 is refundable.

CP at 20. Mr. Trenchuk signed the deposit agreement on behalf of his trust, Mr. Kriger

signed on behalf of Green Global, and two Church representatives signed on behalf of the

Church.

       In late May 2014, Mr. Trenchuk wired the $250,000 to Kennedy Funding at the

request of Mr. Kriger. The Church did not know of this. As of June 15, 2014, Green

Global had not obtained financing from Kennedy Funding nor was it in a position to

obtain the old Fred Meyer building, much less to sell it to the Church.

       In July 2014, Green Global terminated its arrangement with Kennedy Funding.

Green Global released Kennedy Funding from all claims to the $250,000 in exchange for

receiving a partial refund of $30,900.

       In December 2015, the Church and Green Global sent a joint letter to Kennedy

Funding requesting a refund of the $250,000 deposit. Kennedy Funding refused the

request. In May 2016 and May 2017, the Church sent written notices to Green Global and

Mr. Trenchuk requesting a refund of the $250,000 deposit. Green Global and Mr.

Trenchuk refused both requests.

       In October 2017, the Church brought suit to collect the $250,000 deposit, plus

statutory interest. During discovery, the Church sent requests for admission and

interrogatories to Mr. Trenchuk.  In one interrogatory answer, Mr. Trenchuk stated, "I was informed by Ivan Kriger that the church had directed him to send the money to Kennedy Funding so they could obtain the loan for the Fred Meyers [sic] building."  CP at 375.

The Church eventually moved for summary judgment.  Mr. Trenchuk responded to the motion and argued there were material facts in dispute.  By declaration, Mr. Trenchuk contradicted his earlier interrogatory answer and claimed a Church representative had directed him to send the $250,000 deposit to Kennedy Funding.

The trial court disregarded Mr. Trenchuk's inconsistent claim in his declaration, granted the Church's motion for summary judgment, and awarded it $250,000 plus statutory interest.  Mr. Trenchuk appealed.

## ANALYSIS

### SUMMARY JUDGMENT STANDARDS

When reviewing an order of summary judgment, this court reviews the order de novo.  *Keck v. Collins*, 181 Wn. App. 67, 78, 325 P.3d 306 (2014), *aff'd*, 184 Wn.2d 358, 357 P.3d 1080 (2015).  This court performs the same inquiry into the motion for summary judgment as the trial court initially did.  *Id.* The evidence and any reasonable inferences are construed in a light most favorable to the nonmoving party.  *Id.* at 78-79.  Summary

judgment is only appropriate when no material facts are at issue, and the moving party is

entitled to judgment as a matter of law. *Id.*

PURPORTED ISSUES OF MATERIAL FACT

Mr. Trenchuk argues the trial court erred by granting summary judgment because

there were genuine issues of material fact. He argues (1) the deposit agreement was

modified, (2) he complied with the modified deposit agreement and even the original

deposit agreement, (3) the Church received a refund, and (4) the Church was partly at

fault for its damages. In addition, Mr. Trenchuk argues the deposit agreement was

unconscionable. We address the unconscionability claim first.

1.      Unconscionability claim

A contract is unconscionable if it is either substantively unconscionable or

procedurally unconscionable. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258

(1995). Substantive unconscionability is found only where a contract is so one-sided that

it can be called "shocking to the conscience," "monstrously harsh," or "exceedingly

calloused." *Id.* Procedural unconscionability is found where the manner in which the

contract was entered hid the terms of the contract or removed a party's ability to

reasonably understand the terms. *Id.*

Mr. Trenchuk argues the deposit agreement allowed the Church to trick him into being a guarantor before it directed the money to Kennedy Funding. He argues the Church knew the money would be wired to Kennedy Funding and would be nonrefundable. This argument is not supported by any admissible evidence.

Mr. Kriger repeatedly asked the Church to send $250,000 to Kennedy Funding as a nonrefundable loan fee. The Church refused to do this. The parties then entered into the deposit agreement. The deposit agreement was very simple. It required Mr. Trenchuk to deposit the money in his trust, to use the money only to purchase the old Fred Meyer building, and to refund the money on request if the sale did not close by June 15, 2014. Instead of using the money to purchase the old Fred Meyer building, Mr. Trenchuk wired the money to Kennedy Funding. Whether he believed the money would be used to purchase the former Fred Meyer building is immaterial. It was not used in this manner. There is nothing unconscionable about an agreement requiring a person to hold money and disburse it only for a specific purpose.

> 2.     Performance claims

Mr. Trenchuk makes three separate arguments that he performed the deposit agreement. We address each in order.

> ### a. Purported performance of modified deposit agreement

Mr. Trenchuk argues the Church, either itself or through Mr. Kriger, modified the deposit agreement to have him send the deposit to Kennedy Funding. This argument is not supported by any admissible evidence.

Referring to his declaration, Mr. Trenchuk argues a Church representative told him to transfer the funds to Kennedy Funding. This argument is barred under the *Marshall*[1] rule.

The *Marshall* rule disallows a party from creating an issue of material fact by submitting a self-serving declaration directly contradicting "unambiguous sworn testimony" the same party made previously. *Sluman v. State*, 3 Wn. App. 2d 656, 697, 418 P.3d 125, *review denied*, 190 Wn.2d 1005, 430 P.3d 254 (2018). This rule is narrowly construed, and, if the party gives an explanation in their affidavit explaining the discrepancy, the court may consider the explanation's plausibility. *Id.* at 697-98.

Mr. Trenchuk originally answered he was told by *Mr. Kriger* that the Church had directed him to send the money to Kennedy Funding so it could obtain the loan for the old Fred Meyer building. After the Church moved for summary judgment, Mr. Trenchuk claimed, in his declaration, that a *Church representative* directed him to send the money

---

[1] *Marshall v. AC&S Inc.*, 56 Wn. App. 181, 782 P.2d 1107 (1989).

to Kennedy Funding. Mr. Trenchuk never explained the reason for his changed recollection of this very important fact. Under the *Marshall* rule, the trial court properly gave no consideration to the later inconsistent statement.

> b. *Purported performance of deposit agreement*

Mr. Trenchuk makes an alternative argument. He argues Kriger told him to send the deposit to Kennedy Funding, and the Church is bound by Kriger's direction because Kriger was the Church's agent. Mr. Trenchuk relies on an agreement letter the Church entered into on November 21, 2013, with Green Global.

In the 2013 letter, the Church authorized "Ivan Kriger, president of Green Global Enterprises to be our sole negotiator on the property known as Fred Meyer—Located at 525-555 E. Francis Ave. Spokane, WA 99208." CP at 219. The letter further stated, "Ivan Kriger has the right of presenting all down payments and purchase price for Spokane Slavic Baptist Church. Also he can enter into a contract with said seller for purchase price and financing, should financing be available with said seller." CP at 219. In the letter, the Church agreed to "pay commissions to Green Global Enterprises Fifty Four Thousand dollars ($54,000.00) for [Mr. Kriger's] work." CP at 219.

The May 15, 2014 deposit agreement was signed by all participants to the 2013 agreement. The 2014 deposit agreement superseded whatever authority the 2013

8

agreement granted over the purchase and financing of the old Fred Meyer building. More explicitly, the deposit agreement required Mr. Trenchuk to disburse the Church's $250,000 deposit for one purpose only, for the Church's purchase of the old Fred Meyer building. Instead, Mr. Trenchuk sent the deposit money to Kennedy Funding, and it was not used for the Church's purchase of the old Fred Meyer building.

The deposit agreement also required Mr. Trenchuk to refund the $250,000 upon the Church's request if the purchase did not occur by June 15, 2014. The Church never purchased the building. The Church twice requested Mr. Trenchuk to refund the $250,000, and he twice refused. Even viewing the facts in the light most favorable to Mr. Trenchuk, he did not perform the deposit agreement.

### c. *Purported performance: The Church purchased the old Fred Meyer building by June 15, 2014*

Mr. Trenchuk makes a second alternative argument. He argues he performed the deposit agreement because the Church "purchased" the old Fred Meyer building by June 15, 2014. This argument requires us to determine the meaning of "purchase" as used in the parties' deposit agreement.

We quote the focal sentence of the agreement: "If the old building of Fred Meyer is not *purchased* by Spokane Slavic Baptist Church by June 15, 2014, the $250,000 is refundable." CP at 20 (emphasis added).

9

This court interprets undefined terms in contracts according to the plain meaning of the words used. *Syrovy v. Alpine Res., Inc.*, 68 Wn. App. 35, 40, 841 P.2d 1279 (1992), *aff'd*, 122 Wn.2d 544, 859 P.2d 51 (1993). Unless a term is open to multiple reasonable interpretations, the issue of interpretation is a matter of law. *Ladum v. Util. Cartage, Inc.*, 68 Wn.2d 109, 116, 411 P.2d 868 (1966).

The word "purchase" has multiple but similar meanings. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1844 (1993) defines "purchase" as "to get into one's possession," "to acquire (real estate) by any means other than descent or inheritance," "to obtain (as merchandise) by paying money or its equivalent," and "to obtain (something desired) by an outlay (as of labor, danger, sacrifice)." All of these definitions have a common meaning—acquiring or obtaining. It is undisputed the Church did not acquire or obtain the old Fred Meyer building by June 15, 2014, or even after that date. The Church twice demanded its deposit back, and Mr. Trenchuk twice refused. We conclude Mr. Trenchuk did not perform the deposit agreement.

3.      Receipt of refund

Mr. Trenchuk argues the Church received a refund of $30,900 from Kennedy Funding. Mr. Trenchuk relies on testimony given by Mr. Kriger during his deposition. However, Mr. Trenchuk misconstrues Mr. Kriger's testimony and the facts in evidence.

During his deposition, Mr. Kriger mentioned an eventual refund from Kennedy Funding. However, this refund, $30,900, was given from Kennedy Funding to Green Global. Mr. Kriger's deposition makes this clear as does a letter from Kennedy Funding releasing the funds to Green Global. There are no admissible facts to support Mr. Trenchuk's argument the Church received these funds.

4.    Responsibility for damages

Mr. Trenchuk argues the Church caused its own damages when, in December 2015, it informed Kennedy Funding it did not wish to pursue a loan. This argument also is contrary to the record.

The record establishes, in July 2014, Green Global terminated its financing arrangement with Kennedy Funding and, in exchange for releasing Kennedy Funding, received $30,900. By December 2015, Kennedy Funding was not arranging financing for Green Global or the Church, and the Church's $250,000 was gone.

## CONCLUSION

There are no genuine issues of material fact. Mr. Trenchuk's arguments generally misconstrue the evidence. The trial court did not err by granting summary judgment.

No. 36565-4-III
*Spokane Slavic Baptist Church v. Trenchuk*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Pennell, C.J.                                          Siddoway, J.

12