[No. 15012-3-II.   Division Two.   February 22, 1994.]
HECKMAN MOTORS, INCORPORATED, *Appellant*, v. HELEN
B. GUNN, *Respondent*.

*S. Brooke Taylor* and *Platt Irwin Taylor Colley & Oliver*, for appellant.

*Richard L. Shaneyfelt*, for respondent.

MORGAN, C.J. — Heckman Motors sued Helen B. Gunn for specific performance of an option agreement. The trial court ruled for Gunn, and Heckman Motors appealed. We affirm.

Heckman Motors had owned and operated an auto dealership in Port Angeles for many years. In 1985, it wanted to open a new dealership in Port Townsend. It entered into a partnership agreement with Glen "Skip" Wood, whereby

Wood was to locate property in Port Townsend and arrange for the construction of an automobile dealership thereon.

In July 1985, Wood and George Gunn orally agreed that the new dealership would be built on two undeveloped commercial lots owned by George and his wife, Helen. Heckman Motors and Wood would pay for the labor needed to clear the land and make improvements. Gunn would pay for the needed materials.

Over the next couple of months, the land was cleared and the new dealership was constructed. In October, Heckman Motors began paying rent of $550 per month.

In early 1986, Heckman Motors and Wood asked George Gunn for a written lease. Wood's attorney proposed that the lease be for an initial 5-year term; that Heckman Motors have an option to renew for three additional 5-year periods; and that Heckman Motors have the right to sublet the premises without Gunn's consent. Gunn's attorney countered by proposing that Heckman Motors have an option to renew for one additional 5-year period, and that Heckman Motors be able to sublet only with Gunn's consent.

Eventually, Heckman Motors and Gunn signed a 5-year written lease that commenced November 1, 1985, and expired October 31, 1990. It gave Heckman Motors an option to renew for one additional 5-year period. To exercise the option, Heckman Motors had to give Gunn "written notice of its election to extend this lease . . . at least ninety (90) days prior to the end of the then existing five year term." Exhibit 2, para. 3. Heckman Motors could not sublet without Gunn's consent. Heckman Motors was to pay $550 per month in rent.[1]

The new dealership made a profit from 1985 to 1989, except in 1988.[2] During those years, Heckman was able to amortize all or most of the expenses incurred to improve the lots. On January 1, 1988, George Gunn died, and Helen Gunn became sole lessor of the property.

---

[1] By later addendum, the rent was increased to $600 per month. Exhibit 2; Report of Proceedings, at 238.

[2] In 1988, the new dealership suffered a loss as the result of an embezzlement by its manager.

On June 12, 1989, Heckman Motors agreed to sell the dealership business and sublet the Gunn lots. The purchaser and sublessee was Howard Ruddell, another Port Angeles auto dealer. The business was sold for $20,000, which included $5,000 for inventory and $15,000 for a noncompetition agreement. Essentially, the sublease called for rent of $1,500 per month for 18 months, and $2,000 per month thereafter.[3] The term of the sublease was June 12, 1989, to June 11, 1994, with Ruddell having an option to renew for a second 5-year period. Ruddell's option was conditioned on Heckman Motors being able to extend its underlying lease with Gunn.

Heckman then asked Helen Gunn for consent to the sublease. Initially, she was hesitant, because she knew Ruddell would pay more rent to Heckman Motors than Heckman Motors was paying to her. Later, she gave written consent.

August 1, 1990, was the last day for Heckman Motors to exercise its option to renew the Heckman-Gunn lease. However, James Heckman failed to read the lease correctly, and he thought Heckman Motors could renew at any time between August 1 and October 31, 1990. On September 14, 1990, he attempted to hand deliver a renewal notice to Helen Gunn. She said she was no longer handling her business affairs, and that he should give the renewal notice to her attorney. Heckman then left the renewal notice at the office of her attorney.

On September 16, Gunn's attorney notified Heckman Motors that the lease had not been timely renewed, and that it would terminate on October 31, 1990. On October 23, Heckman Motors sued Helen Gunn for specific performance of the option to renew for another 5 years. The trial court rendered judgment in favor of Gunn, and Heckman appealed.

Generally, an option must be exercised in a timely manner. *See Nadeau v. Beers*, 73 Wn.2d 608, 610, 440 P.2d 164

---

[3]The sublease called for rent of $2,000 per month. However, Ruddell intended to make $17,000 worth of improvements to the property. Heckman agreed to participate in these costs by offsetting $500 per month against the rent, for the first 18 months of the sublease term.

(1968); *Langston v. Huffacker*, 36 Wn. App. 779, 788-89, 678 P.2d 1265 (1984); *Local 112, I.B.E.W. Bldg. Ass'n v. Tomlinson Dari-Mart, Inc.*, 30 Wn. App. 139, 142, 632 P.2d 911, *review denied*, 96 Wn.2d 1017 (1981). According to Professor Corbin, however,

> [t]here is one sort of case in which it has been held that the power of acceptance continues to exist for a short time after the expiration of a time limit expressly set by the offeror and known to the offeree. The only cases known to the writer, in which it has been so held, were cases of option contracts creating an irrevocable power, and in which the holder of the option neglected to give notice of acceptance within the time fixed although he had made valuable permanent improvements with intention to give the notice.
>
> Thus, it was held that the power of the holder of an option to buy or renew, contained in a lease, is not necessarily terminated by failure to give notice within the specified time. If, in expectation of exercising the power, the lessee has made valuable improvements, and the delay is short without any change of position by the lessor, the lessee will be given specific performance of the contract to sell or to renew. This is for the purpose of avoiding an inequitable forfeiture.

(Footnote omitted.) 1 Arthur L. Corbin, *Contracts* § 35, at 146-47 (1963). Washington law is in accord. *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wn. App. 601, 605 P.2d 334 (1979).[4]

---

[4]In *Wharf*, a long-term lessee of real property had an option to renew its lease. The lessee made substantial valuable improvements with intent to renew, but then failed to renew before the option terminated. When the lessor refused to allow late renewal, the lessee sued for specific performance. Resorting to equity, the trial court ordered specific performance, and the appellate court affirmed. The appellate court said:

> The courts which have considered this problem have not found the solution simple. On the one hand is equity's abhorrence of a forfeiture. On the other hand is the general reluctance of courts to relieve a party from its own negligent failure to timely exercise an option, when to do so might tend to introduce instability into business transactions and disregard commercial realities.

*Wharf*, 24 Wn. App. at 610. The court mentioned several factors bearing on equitable relief, including (1) whether the lessee had made valuable permanent improvements with intent to exercise its option; (2) the length of the delay in exercising the option; (3) whether the lessor had been prejudiced by the delay; and (4) whether the delay was due to mere negligence, or to grossly negligent or intentional conduct. *Wharf*, at 612-13.

■ Nothing in Corbin or *Wharf* suggests that a trial court *must* allow the late exercise of an option. The general rule is that an option must be exercised timely or it is lost. Under Corbin and *Wharf*, there is an exception only when equity requires it. Whether equity requires it is in large part a matter addressed to the discretion of the trial court, with discretion to be exercised in light of the facts and circumstances of the particular case.

Turning to this case, we agree with the trial court that Heckman Motors had not made, and would not forfeit, substantial valuable improvements of the sort present in *Wharf*. According to Heckman Motors' brief on appeal, it spent about $18,000 to find the lot and improve it with paving, landscaping and a sales building.[5] According to the trial court, Gunn spent about $23,000 for materials.[6] According to James Heckman's testimony and the trial court's findings, Heckman Motors "had basically amortized out all . . . expenses in the improvement of that lot"[7] during the initial 5-year term of the lease. The trial court ruled:

> [W]hen we are looking at who has the greatest investment, even if we accept [Heckman Motors'] figures, the Gunns have paid for a greater percentage of the work on the property and I do not see, under the circumstances of this case, that the court could find that there will be an inequitable forfeiture.[8]

This ruling was not an abuse of discretion.

Additionally, Heckman Motors' delay in exercising the option was not short. It was more than 6 weeks, for no reason except that James Heckman did not read the lease appropriately. Gunn was not prejudiced by the delay, but

---

[5]Brief of Appellant, at 21. By using this figure, we give the benefit of the doubt to Heckman Motors. The trial court actually found that Heckman Motors had "expended about forty-seven hundred dollars out-of-pocket, plus the salary of Skip Wood as he worked on putting the whole package together and also on the building . . . .." Report of Proceedings, at 465.

[6]Conclusion of law 4. At least in part, this conclusion is really a finding of fact, which we hold to be supported by substantial evidence.

[7]Report of Proceedings, at 198.

[8]Report of Proceedings, at 466.

neither did Gunn do anything to induce or contribute to the delay, a fact that contrasts significantly with *Wharf*.

When all the circumstances of this case are viewed in combination, it appears that the real economic issue was not the possibility that Heckman Motors would forfeit valuable improvements previously made, or that Gunn would or would not be prejudiced by Heckman Motors' delay in exercising its option to renew. Rather, the real issue was whether Heckman Motors would be able to continue collecting rent from Ruddell in an amount greater than the rent it was paying Gunn. The trial court acted within its discretion in concluding that this was an insufficient reason to allow late exercise of the option, and there was no error in this case.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.