[No. 66226-1-I. Division One. December 19, 2011.]

RECREATIONAL EQUIPMENT, INC., *Appellant*, v. WORLD WRAPPS NORTHWEST, INC., *Respondent*.

554

*Jeremy R. Larson, Jeffrey G. Frank,* and *Kathryn C. McCoy* (of *Foster Pepper PLLC*), for appellant.

*Paul R. Taylor* and *Jofrey M. McWilliam* (of *Byrnes Keller Cromwell LLP*), for respondent.

¶1 Cox, J. — Special circumstances may warrant a court granting equitable relief to a lessee who either fails or delays in giving notice to exercise an option in accordance with the written terms of its lease.[1] Here, the trial court properly exercised its discretion in deciding that special circumstances existed to warrant granting a grace period to World Wrapps Northwest Inc. to exercise its option to extend the term of its lease with Recreational Equipment Inc. (REI). We affirm.

¶2 World Wrapps owns and operates several restaurants in the Seattle area. The restaurant at issue in this unlawful

---

[1] *Wharf Rest., Inc. v. Port of Seattle*, 24 Wn. App. 601, 610-11, 605 P.2d 334 (1979).

detainer action is located in REI's flagship store in downtown Seattle.

¶3 The parties entered into the original lease dated May 25, 1995. This lease provided that the original five-year term did not commence until the first day of the first calendar month following the calendar month in which World Wrapps took physical possession of the premises. The trial court found that there was confusion between the parties as to when World Wrapps took physical possession. The trial court also found that the first five-year term of the lease commenced, at the earliest, on September 1, 1996. It is undisputed that the original lease contained options for two five-year extensions. It appears that World Wrapps properly exercised the first option to extend.

¶4 In 2005, during the first extended term, World Wrapps and REI began negotiating a third amendment to the original lease. The trial court found that World Wrapps wanted to remodel its space at an estimated expense of $250,000. The trial court also found that World Wrapps would not have committed to such an investment without both retaining the right to remain in the premises through the end of the term of the second option period (which would have ended, at the earliest, August 31, 2011) as well as obtaining two additional five-year option periods beyond the end of the second option period.

¶5 The trial court found that the third amendment, drafted by REI's attorney, incorrectly stated that the term of the lease, as extended, expired on May 25, 2010. This incorrect date required World Wrapps to give REI written notice of its intent to exercise the third option by November 27, 2009, 180 days before the incorrectly stated expiration date of the lease.

¶6 Both World Wrapps and REI signed the third amendment. World Wrapps did not initially notice that the end of the lease term, as extended, was incorrectly stated as May 25, 2010. The trial court also found that the parties did not

intend to modify the termination date of the lease, as extended, from the fall of 2011 to May 25, 2010.

¶7 World Wrapps maintains a tickler system for its leases. The system is used to monitor renewal dates, extension dates, and rent increases. That system reflected September 30, 2011, as the termination date of the lease, as extended. World Wrapps never modified its tickler system to reflect the incorrect May 25, 2010, end date. The trial court found that World Wrapps reasonably believed that notice of exercise of the third option to extend was due 180 days before September 30, 2011.

¶8 Shortly before November 27, 2009, REI discussed internally that World Wrapps would be required to give notice of exercise of its third option to extend by that date. This discussion was based on the incorrect May 25, 2010, date in the third amendment. The trial court found that there was general agreement and belief by REI that World Wrapps did not intend to let the lease lapse by failing to exercise timely the third option. Despite this belief, REI decided not to tell World Wrapps of the impending date and directed its flagship store manager to do the same. REI deliberately waited several weeks after the November 27, 2009, date before notifying World Wrapps that the time to exercise the third option had passed.

¶9 On January 8, 2010, REI notified World Wrapps, in writing, that World Wrapps had lost the right to exercise the third option and that the lease would terminate on May 25, 2010. Six days later, World Wrapps delivered written notice to REI that it was exercising the third option. REI refused to honor this exercise of the option.

¶10 World Wrapps did not vacate the premises on May 25, 2010. REI commenced this unlawful detainer action on July 1, 2010. It claimed that the lease expired on May 25, 2010, that World Wrapps failed to give timely notice of exercise of the third option and that REI was entitled to relief under RCW 59.12.030(2) and (3). World Wrapps asserted affirmative defenses and counterclaims.

¶11 In a three-day bench trial, the trial court granted World Wrapps an equitable grace period to exercise the third option and denied its other affirmative defenses and counterclaims. The court also denied all of REI's claims for relief. It then granted, in part, World Wrapps' request for attorney fees and costs.

¶12 REI appeals. World Wrapps cross-appeals the amount of attorneys fees the trial court awarded to it as the prevailing party below.

## EQUITABLE GRACE PERIOD

¶13 REI argues that the trial court abused its discretion in awarding World Wrapps an equitable grace period in which to exercise its third option to extend. We hold that special circumstances existed in this case, and the trial court properly exercised its discretion by granting the grace period.

■ ¶14 The general rule is that an option must be timely exercised or it is lost.[2] Special circumstances may warrant a court granting equitable relief to a lessee who either fails or delays in giving notice to exercise an option to extend in accordance with the written terms of its lease.[3]

¶15 Unchallenged findings of fact are verities on appeal.[4] Challenged findings of fact are reviewed under a substantial evidence standard, which requires that there be sufficient evidence in the record to persuade a reasonable person that a finding of fact is true.[5] If substantial evidence supports a finding of fact, an appellate court should not

---

[2] *Heckman Motors, Inc. v. Gunn*, 73 Wn. App. 84, 88, 867 P.2d 683 (1994).

[3] *Wharf*, 24 Wn. App. at 610-11.

[4] *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999).

[5] *Pardee v. Jolly*, 163 Wn.2d 558, 566, 182 P.3d 967 (2008) (citing *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

substitute its judgment for that of the trial court.[6] Questions of law are reviewed de novo.[7]

¶16 A trial court has discretion to decide whether equity requires an equitable grace period.[8] This discretion is to be exercised in light of the particular case's facts and circumstances.[9] Because the trial court has broad discretionary authority to fashion equitable remedies, such remedies are reviewed for an abuse of discretion.[10] An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons.[11]

¶17 In *Wharf Restaurant, Inc. v. Port of Seattle,*[12] this court considered the effect of a lessee's failure or delay in giving notice of intent to exercise an option to extend. Generally, "a notice of election to renew a lease conformable to an option therein contained must be definite, unequivocal, unqualified and given strictly in accordance with the terms of the lease."[13] Consistent with this principle, "it is generally recognized that where a lessee has a right of renewal provided it gives the lessor notice by a specified time that it intends to exercise such privilege, the giving of the notice is a condition precedent with which the lessee must comply within the stipulated time. . . ."[14] But the

---

[6] *Id.* (citing *Sunnyside Valley,* 149 Wn.2d at 879-80).

[7] *Id.* (citing *Sunnyside Valley,* 149 Wn.2d at 880).

[8] *Heckman Motors,* 73 Wn. App. at 88.

[9] *Id.*

[10] *Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship,* 158 Wn. App. 203, 221, 242 P.3d 1 (2010) (citing *SAC Downtown Ltd. P'ship v. Kahn,* 123 Wn.2d 197, 204, 867 P.2d 605 (1994)), *review denied,* 171 Wn.2d 1014 (2011).

[11] *Id.* (citing *Gildon v. Simon Prop. Grp., Inc.,* 158 Wn.2d 483, 494, 145 P.3d 1196 (2006)).

[12] 24 Wn. App. 601, 605 P.2d 334 (1979).

[13] *Id.* at 610 (citing *Jones v. Dexter,* 48 Wn.2d 224, 226, 292 P.2d 369 (1956)).

[14] *Id.*

existence of "special circumstances" may warrant a court of equity's giving relief in limited circumstances.[15]

¶18 In *Wharf*, the special circumstances that justified the trial court's granting an equitable grace period in that case included:

1. The failure to give notice was purely inadvertent. . . . It was not the result of intentional, culpable or, . . . "grossly negligent" conduct.

2. An inequitable forfeiture would have resulted had equity not intervened. . . .

3. As a result of the [lessee's] failure to give timely notice, the [lessor] did not change its position in any way and was not prejudiced thereby. . . .

4. The lease was for a long term, not a short term. . . .

5. There was no undue delay in the giving of notice by the [lessee].[16]

¶19 Here, REI does not challenge that World Wrapps established factors 1, 3, and 4: World Wrapps' failure to give notice was purely inadvertent, such failure did not prejudice REI, and the lease was for a long term. But, it does claim that the trial court abused its discretion by deciding that World Wrapps would have suffered an inequitable forfeiture without a grace period and that the delay in the giving of notice was not undue.

### Inequitable Forfeiture

¶20 REI specifically argues that World Wrapps did not prove that it either would forfeit the type of substantial improvements that are required by Washington law or that its improvements were made specifically with the intent to exercise the third option.[17] We disagree.

---

[15] *Id.* at 610-11.

[16] *Id.* at 612-13.

[17] Appellant's Opening Brief at 27.

¶21 Here, the trial court concluded there would have been an inequitable forfeiture:

[World Wrapps], by contrast, will suffer considerable harm if the exercise is not recognized. It would lose at least a year and four months under the current term (the difference between May 25, 2010, and September or October 1, 2011) as well as the ability to exercise the third and fourth options, which the parties agreed to at the time of the 2006 remodel. It would also lose a gross income stream of between $750,000 and $1 million per year. [World Wrapps] cannot replicate that income in another location, nor does it have the resources to open another location. The cash generated by the REI store is critical to the survival of [World Wrapps] as a whole. If [World Wrapps] loses the REI location, [World Wrapps] as a whole would likely go out of business. [World Wrapps] will also lose the value of its investment in upgrading the space in 2006—approximately $250,000.[18]

¶22 REI challenges the factual findings underlying this portion of the trial court's decision. We conclude that these findings are supported by substantial evidence in the record.

¶23 We start with the finding in the above quotation that "the parties agreed to [the third and fourth options to extend] at the time of the 2006 remodel." Unchallenged finding 2 pinpoints the time of the expenditure of funds for the remodel as "spring 2006."[19] Thus, the parties made this agreement during the period of negotiations that started in 2005 and the expenditure of funds for the remodel in the spring of 2006, before the execution of the third amendment by the parties in late 2006 and early 2007.

¶24 The court also found that "[t]he proposed remodel was expensive—approximately $250,000. [World Wrapps] would not have committed to such an investment without

---

[18] Clerk's Papers at 340 (Conclusion of Law 5).

[19] Clerk's Papers at 351.

receiving the extension through the end of the second option period and the two additional option periods."[20] World Wrapps' president testified that the company would not have spent $250,000 on the remodel unless REI entered into the third amendment. Based on this testimony and other evidence, there is substantial evidence to support each of the challenged findings.

¶25 The question, then, is whether these findings support the court's conclusion that forfeiture would have been inequitable under the circumstances of this case without granting a grace period. We conclude that the trial court's conclusion was correct: a grace period was proper.

¶26 In *Wharf*, this court discussed the requirements of an inequitable forfeiture:

[A] reading of the trial court's findings of fact and conclusions of law in context with the trial record convinces us that the trial court was satisfied that *permanent improvements had been made on the premises by the lessee with the intention of exercising its option and remaining on the premises*.[21]

¶27 This discussion is consistent with Professor Corbin's quotation in that case concerning the scope of the exception to the general rule that an option must be exercised strictly in accordance with the written terms of the agreement:

"Thus, it was held that the power of the holder of an option to buy or renew, contained in a lease, is not necessarily terminated by failure to give notice within the specified time. *If, in expectation of exercising the power, the lessee has made valuable improvements, and the delay is short without any change of position by the lessor, the lessee will be given specific performance of the contract to sell*

---

[20] Clerk's Papers at 352.

[21] *Wharf*, 24 Wn. App. at 612 (emphasis added).

*or to renew.* This is for the purpose of avoiding an inequitable forfeiture."[22]

¶28 The findings here support the conclusion that World Wrapps made substantial improvements to the premises, both in expectation of exercising the third and fourth options, as well as remaining in the space through September 30, 2011. Thus, this case falls squarely within the narrow exception to the general rule: where a lessee makes valuable improvements to a leasehold in expectation of exercising an option, equitable relief may be proper.

¶29 REI claims that forfeiture would not have been inequitable without a grace period. Specifically, REI asserts that the improvement made by World Wrapps is not the type of "valuable" improvement required under Washington law. Further, it claims that the improvement was not made with intent to exercise the third option. Finally, it claims the improvement was completed before either party executed the third amendment. None of these arguments is persuasive.

¶30 By nature of its amount, the $250,000 expenditure for the improvement in this case obviously fulfills the requirement that a lessee make "valuable improvements" to the premises. We also reject the argument that the improvement was not made with intent to exercise the third option. The trial court expressly found otherwise in properly supported findings that we already discussed in this opinion. Finally, REI cites no authority for its novel argument that an improvement made in contemplating exercise of an option must be made before the execution of a writing memorializing the option to extend or renew. Such a narrow reading of the cases is at odds with *Wharf* and other relevant authority.[23]

---

[22] *Id.* at 611 (emphasis added) (quoting 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 35, at 146-47 (1963)).

[23] *See Cornish*, 158 Wn. App. at 218 (explaining that requiring all five *Wharf* factors be present to award an equitable grace period is an "inflexible approach

¶31 The trial court also articulated additional reasons warranting equitable relief in this case. They included the premature termination of the lease term arising from the erroneous May 25, 2010, date that REI inserted into the third amendment. Enforcing that premature termination date would have caused a loss of substantial gross income to World Wrapps. The potential closure of World Wrapps' business by forcing it to shut down its operations in REI's flagship store was another consequence that the court considered.

¶32 We need not decide in this case whether these additional equitable considerations would have been sufficient special circumstances, by themselves, to warrant a grace period to exercise the option. This is because the valuable improvement that World Wrapps made in contemplation of exercising the third and fourth options is enough of a special circumstance, by itself, to warrant the grace period granted by the trial court.

¶33 REI presents several other reasons why World Wrapps should not have prevailed. First, it argues that World Wrapps would not have forfeited its investment in the 2006 remodel because it had more than four years of use and enjoyment of the premises after the remodel was complete. REI then argues that there was no inequitable forfeiture because World Wrapps had an opportunity to fully amortize the remodel costs and its equipment was substantially depreciated in value. REI next claims that there was no inequitable forfeiture because World Wrapps recouped 67 percent of the remodel costs through rent reductions. Finally, REI argues that it also invested a significant amount of money in the World Wrapps remodel. REI appears to claim that this investment offsets the equities in favor of World Wrapps.

¶34 These arguments are unpersuasive for two reasons. First, they are based on asserted facts that the trial court

[that] would be inconsistent with the trial court's broad discretion to fashion equitable remedies").

did not find. Generally, where a trial court does not make a finding of fact, we presume a finding against such fact.[24] It is not a function of this appellate court to speculate whether the trial court would have made the findings argued by REI. And, even if we engaged in such speculation, it is not a function of this appellate court to reweigh the trial court's equitable considerations and determine whether we would have decided the case differently. Rather, the proper review standard of this court is to decide whether the trial court's findings are supported by substantial evidence and whether those findings support the court's discretionary determination that it should grant equitable relief.

¶35 Second, REI relies heavily on *Heckman Motors, Inc. v. Gunn*,[25] but that case does not require a different result here. In *Heckman*, Division Two affirmed the trial court's decision not to award an equitable grace period because Heckman Motors did not make, and would not forfeit, substantial valuable improvements to the premises at issue.[26] There, the improvements were made five years before the expiration of the lease term.[27] As we read that case, the trial court did not base its conclusion on that factor alone. Rather, it held that there was no inequitable forfeiture because the lessor paid for a greater percentage of the improvements and the lessee had amortized all of the expenses incurred during the initial lease term.[28]

¶36 *Heckman* does not hold that either the enjoyment of improvements over a four-year period or the investment in substantial improvements by a lessor, alone, precludes an inequitable forfeiture. Moreover, the trial court there made

---

[24] *In re Estate of Bussler*, 160 Wn. App. 449, 465, 247 P.3d 821 (2011) (quoting *In re Welfare of A.B.*, 168 Wn.2d 908, 927 n.42, 232 P.3d 1104 (2010) (quoting *State v. Armenta*, 134 Wn.2d 1, 14, 948 P.2d 1280 (1997))).

[25] 73 Wn. App. 84, 867 P.2d 683 (1994).

[26] *Id.* at 88.

[27] *Id.*

[28] *Id.*

specific findings on those issues that the trial court in this case did not make. As such, we conclude that *Heckman* is not helpful here.

¶37 REI also argues that there is no evidence that it would receive a windfall if World Wrapps were evicted, as there was in *Wharf* or *Cornish College of the Arts v. 1000 Virginia Limited Partnership.*[29] Neither case states that the trial court found there was an inequitable forfeiture because the lessor would receive a windfall.[30] Therefore, these cases do not support REI's argument.

## *Undue Delay*

 ¶38 REI argues that World Wrapps failed to establish that there was no undue delay in exercising the option. We disagree.

¶39 In *Wharf*, this court decided that the trial court's findings supported the conclusion that the lessor's conduct substantially contributed to the delay, so it was not undue.[31] There, over the 25-year history of the lease, the parties did not follow the prescribed methods for exercising the lease options or readjusting rentals and the lessor had previously accepted late exercises without comment.[32] When a new director of real estate took over, the lessor changed the policy to require strict compliance without any notice to the lessee.[33] This court held the trial court did not abuse its discretion by granting equitable relief under the circumstances.

¶40 Here, World Wrapps exercised its option to renew six days after receiving written notice from REI that the time to exercise the option had expired weeks earlier. This

---

[29] 158 Wn. App. 203, 242 P.3d 1 (2010), *review denied*, 171 Wn.2d 1014 (2011).

[30] *Wharf*, 24 Wn. App. at 612; *Cornish*, 158 Wn. App. at 218-21.

[31] *Id.*

[32] *Id.*

[33] *Id.*

exercise of the option was some seven weeks after the erroneous November 27, 2009, deadline. Nevertheless, the trial court concluded that there was no undue delay because REI's conduct contributed to the delay:

> *First, REI's in-house counsel used a termination date which incorrectly shortened the end date of the second option from August or September 2011 to May 25, 2010. This mistake by the lawyer contributed to [World Wrapps'] delay in exercising the option.* Second, REI delayed signing and returning the Third Amendment for seven months after it was executed by [World Wrapps]. This contributed to the ending date in the Amendment not being correctly noted in [World Wrapps'] system. Third, REI believed that [World Wrapps] was inadvertently overlooking the exercise date and that [World Wrapps] intended to exercise: "I bet [World Wrapps] just dropped the ball, and wants to stay." Notwithstanding, REI intentionally did not tell [World Wrapps] and instead decided to exploit the situation it helped to create. This also contributed to [World Wrapps'] delay in exercising the option.[34]

The emphasized portion of the above finding is supported by substantial evidence in the record. So is the following finding:

> [World Wrapps] signed the Third Amendment in November 2006. There were many reviews of the Third Amendment and negotiation of other terms. There were no emails or negotiations of the termination date. [World Wrapps] mistakenly did not notice that the date inserted by the REI lawyer was incorrectly calculated and shorter than the date that results from extending the lease through the end of the second option period.[35]

¶41 World Wrapps' chief executive officer testified that during the third amendment negotiations, neither party discussed changing any of the dates in the original lease.

---

[34] Clerk's Papers at 340-41 (Conclusion of Law 7) (footnotes omitted) (emphasis added).

[35] Clerk's Papers at 337 (Finding of Fact 8).

The trial court also found that the REI employees who testified were not credible in claiming that there was a business reason for insertion of the May 25, 2010, lease expiration date into the third amendment. This court will not review credibility determinations made by the trier of fact.[36] Accordingly, the trial court's credibility finding regarding the absence of any business reason or negotiation on this point stands. This record supports the trial court's conclusion that REI contributed to World Wrapps' delay in exercising its option to renew the lease.

¶42 Parties are generally charged with knowledge of the contents of the documents that they sign.[37] Thus, REI had no legal duty to inform its tenant of the erroneous May 25, 2010, lease termination date contained in the third amendment, which triggered the erroneous November 27, 2009, notice of exercise date.

¶43 Nevertheless, the trial court, sitting as a court of equity, was well within its discretion to decide that REI was at fault for inserting the incorrect lease termination date. Because these errors would have caused World Wrapps to forfeit a valuable right to extend under the third and fourth options, the trial court properly exercised its discretion to grant an equitable grace period. In sum, REI's conduct did contribute to the delay in exercising the option. Therefore, that delay was not undue.

¶44 REI argues World Wrapps' delay was undue under *Wharf* because here there is no evidence that REI previously accepted late renewal notices from World Wrapps. Nothing in *Wharf* limits a lessor's contribution to the delay to that specific circumstance. This argument is not persuasive.

¶45 REI also argues that substantial evidence does not support the trial court's finding that REI's failure to timely return a signed copy of the third amendment contributed to

---

[36] *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

[37] *Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 381, 745 P.2d 37 (1987).

World Wrapps' delay. Even assuming, without deciding, this fact is true, it makes no difference to the outcome. As we explained, the trial court was entitled to rely solely on the first of several reasons that it gave for deciding that REI contributed to the delay in this case. It is irrelevant to the outcome whether the other reasons are correct or not.

¶46 To summarize, the trial court did not abuse its discretion in granting a grace period to permit World Wrapps to exercise the third option. REI's arguments to the contrary are unpersuasive.

¶47 The balance of this opinion has no precedential value. Accordingly, under RCW 2.06.040, it shall not be published.

BECKER and LAU, JJ., concur.