# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68746-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MICHAEL FREEDMAN, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: September 16, 2013 |
| | ) | |

COX, J. – Robert Freedman challenges the deadly weapon enhancement portion of his judgment and sentence for second degree assault, claiming there was insufficient evidence to find that the aluminum bat he used in the assault qualified as a deadly weapon. In his Statement of Additional Grounds, he argues that he received ineffective assistance of counsel. We disagree with both claims and affirm.

Freedman and Anthony Lemon worked together for a number of years as longshoremen. One day in August 2011, both men left work around the same time in their vehicles. Freedman testified that he wanted to talk to Lemon about a recent incident at work.

At a stoplight on Elliott Avenue in Seattle, Freedman got out of his car and walked to the driver side window of Lemon's van. A UPS truck driver, who was stopped behind Freedman's car, testified that it appeared that Freedman and Lemon were in a verbal argument. At one point, Lemon got out of his van and

Freedman went back to his car to grab an aluminum bat. The men eventually got back into their vehicles and drove into a nearby parking lot.

In the parking lot, an eyewitness called 911 when he saw Freedman get out of his car with an aluminum bat and approach Lemon. This witness testified that Freedman struck Lemon approximately six times with the bat before law enforcement arrived on the scene.

Lemon testified that he suffered welts and bruises, and he had to go to the emergency room because of pain and swelling. He also had to see a surgeon because of a torn bicep muscle.

The State charged Freedman with second degree assault. It also alleged the Freedman used a deadly weapon for the purpose of a deadly weapon enhancement.

A jury convicted Freedman as charged, including the deadly weapon allegation.

Freedman appeals.

## DEADLY WEAPON ENHANCEMENT

Freedman argues that the deadly weapon enhancement must be reversed because the evidence was insufficient to establish that the aluminum bat qualified as a deadly weapon. We disagree.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find guilt beyond a reasonable doubt.[1] "A claim of insufficiency admits the truth of the State's

---

[1] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

evidence and all inferences that reasonably can be drawn therefrom."[2] Matters pertaining to credibility of witnesses, conflicting testimony, and persuasiveness of the evidence are the exclusive province of the fact finder.[3]

For a deadly weapon allegation, the State must prove that an "implement or instrument . . . has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death."[4] Whether a weapon is deadly is a question of fact that the State must prove beyond a reasonable doubt.[5]

Here, there was sufficient evidence that the weapon used in this case had "the capacity to inflict death."[6] Eyewitness, Thomas Fleischer, testified that he saw Freedman use an "aluminum baseball or softball bat" to strike Lemon. Common sense supports the view that an aluminum bat has the capacity to inflict death.

Additionally, we note that such a bat is sufficiently similar to a "metal pipe or bar used or intended to be used as a club," which would make it a deadly weapon as a matter of law. [7]

---

[2] Id.

[3] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

[4] RCW 9.94A.825.

[5] State v. Tongate, 93 Wn.2d 751, 753-55, 613 P.2d 121 (1980).

[6] RCW 9.94A.825.

[7] See id. ("The following instruments are included in the term deadly weapon: Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer

In sum, the jury properly determined that the aluminum bat used in this assault had the "capacity to inflict death."[8]

The remaining question is whether there was substantial evidence that the manner in which Freedman used the bat "[was] likely to produce or [could have] easily and readily produce[d] death."[9] We conclude there was such evidence.

Fleischer, the eyewitness, observed Freedman deliver three "quick" strikes with the bat. For the first strike, Freedman used two hands on the bat and hit Lemon in the ribs or abdomen with a force that made Lemon move "backwards." Fleischer testified that Freedman quickly hit Lemon two more times with the bat in the abdomen using one hand. In total, Fleisher testified that Freedman hit Lemon six times with the bat though the last three strikes did not look as forceful as the first three.

Lemon testified that before Freedman started swinging the bat he said he was going to "teach [Lemon] a lesson." He also testified that Freedman "tried to hit [him] in the head," but Lemon was able to block him from doing so.

As noted above, Lemon testified that he suffered welts and bruises. He also stated that he had a torn bicep muscle.

Taking this evidence in the light most favorable to the State, there was sufficient evidence presented for a rational finder of fact to decide that the

---

than three inches, any razor with an unguarded blade, *any metal pipe or bar used or intended to be used as a club*, any explosive, and any weapon containing poisonous or injurious gas.") (emphasis added).

[8] See id.

[9] Id.

manner in which Freedman used the bat could have "easily and readily produce[d] death."[10]

Freedman argues that the State presented "no evidence of the bat's capacity to inflict actual death." He points out that the State "did not introduce expert or other testimony regarding how such a bat could be used to inflict actual death." As we already discussed, the capacity of the aluminum bat to inflict death is well supported by the evidence. And, as the State points out, Freedman does not cite any authority requiring an expert witness to testify about an instrument's capacity to inflict death. This is particularly apparent where the jury could assess whether the bat had the required capacity without expert testimony.

Freedman also contends that the evidence did not show that the manner in which he used the bat was "likely to produce or may easily and readily produce death."[11] He points to his testimony that he never tried to hit Lemon in the head and he avoided hitting him in the head because "he did not want to inflict serious injury." But, as discussed above, Lemon testified that Freedman tried to hit him in the head with the bat. We do not review the jury's credibility determinations on appeal.[12]

Freedman also highlights the fact that Lemon did not testify that he "fear[ed] for his life" during the altercation. But absence of this type of testimony

---

[10] Id.

[11] Brief of Appellant at 11-12 (citing RCW 9.94A.825).

[12] Recreational Equip., Inc. v. World Wrapps Nw., Inc., 165 Wn. App. 553, 568, 266 P.3d 924 (2011).

is irrelevant to the jury's charge. Rather, the jury properly determined, based on the evidence before it, that Freedman was armed with a deadly weapon when he committed the crime.

In sum, the State presented sufficient evidence for a rational finder of fact to conclude that Freedman was armed with a deadly weapon when he assaulted Lemon.

## STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds, Freedman raises one issue. He argues that his counsel was ineffective for not calling any character witnesses to testify about Freedman's reputation for "peacefulness." This argument is not persuasive.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his trial.[13] The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[14] Failure on either prong defeats a claim of ineffective assistance of counsel.[15]

---

[13] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[14] McFarland, 127 Wn.2d at 336.

[15] Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Here, Freedman fails to show that his counsel's decision not to call any character witnesses was objectively unreasonable. Freedman's counsel explained to the trial court that he was not calling any character witnesses to testify as to Freedman's reputation for peacefulness because it was not disputed that the physical altercation occurred. Rather, Freedman asserted that he acted in self-defense. Because Freedman fails to establish deficient performance, we need not reach the question of prejudice.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR: