IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

SEATTLE CHILDREN'S HOSPITAL,   )   No. 74433-0-I
                                  )
           Respondent,  )
                                  )
            v.                  )   UNPUBLISHED OPINION
                                  )
AMARJIT SANDHU; AMERICAN PIZZA )
& PASTA INC.,                    )
                                  )
           Appellants.   )   FILED: February 27, 2017

SCHINDLER, J. — In 2005, Amarjit Sandhu and American Pizza and Pasta Inc.

(collectively Sandhu) entered into a 10-year lease agreement. The agreement gave

Sandhu the option to extend the lease for two additional 5-year terms. But the plain and

unambiguous language of the lease states Sandhu cannot exercise the option to extend

if he "has ever been in default beyond any applicable cure period more than two (2)

times in any twelve (12) month period." We affirm the decision on summary judgment

that Sandhu was not entitled to exercise the option to extend the lease.

FACTS

Amarjit Sandhu is the president and sole stockholder of American Pizza and

Pasta Inc. On December 23, 2005, Touchstone 9th and Stewart LLC (Touchstone)

entered into an agreement with Sandhu to lease 1,246 square feet of street-level retail

space in the Ninth & Stewart Life Sciences Building. The Ninth & Stewart Life Sciences Building contains more than 200,000 square feet of medical research space.

The 10-year lease agreement expired on December 31, 2015. The agreement gave Sandhu the option to extend the lease for two additional 5-year terms. The lease agreement states, in pertinent part:

> Extension Option. Tenant shall have the option to extend this lease (the "Extension Option") for two additional terms of five (5) years each (the "Extension Period"), upon the terms and conditions hereinafter set forth.

But the plain and unambiguous language of the lease agreement states Sandhu cannot exercise the extension option if he "has ever been in default beyond any applicable cure period more than two (2) times in any twelve (12) month period."

The lease agreement required Sandhu to make the monthly rent payment on the first day of each month. The monthly rent payment included a "Base Rent" and an "Additional Rent" based on Sandhu's share of "Operating Expenses and Taxes." Section 4.1 of the lease agreement states, in pertinent part:

> Each monthly installment (the "Monthly Rent") shall be payable by check or by money order on or before the first day of each calendar month. In addition to the Base Rent, Tenant also agrees to pay Tenant's Share of Operating Expenses and Taxes (each as hereinafter defined), and any and all other sums of money as shall become due and payable by Tenant as hereinafter set forth, all of which shall constitute additional rent under this Lease (the "Additional Rent").

Beginning in early 2006, Sandhu operated A Pizza Mart in the leased retail space. Pizza Mart sold "pizza and other foods, together with non-alcoholic beverages, beer, and wine." In February 2006, Sandhu and Touchstone amended the lease to add American Pizza and Pasta Inc. as a tenant.

In 2006, Seattle Children's Hospital (Children's) purchased the Ninth & Stewart Life Sciences Building for "laboratory research related to diseases and conditions that affect children."

In 2010, the monthly base rent under the lease agreement was $3,219.00 and the additional rent was $827.71 for a total monthly rent payment of $4,046.71. On January 25, Sandhu paid only $2,903.00 of the $4,046.71 due for the January 2010 rent. On March 25, Sandhu paid only $2,903.00 for the February rent.

On March 25, Children's sent Sandhu a letter addressing the failure to pay the full amount of rent due under the lease agreement and directing Sandhu to "pay Seattle Children's Research Institute $4,046.71 per month . . . on the first of each month." The letter states, in pertinent part:

> Pursuant to your lease, effective January 1, 2010, your monthly base lease rate at 1900 9th Ave is $3,219. Our records indicate you are currently paying a total of $2,903 and you should have increased your payment amount per the lease agreement in each of the last three years.
>
> In addition to the base rent payment, you are to be paying Additional Rent . . . as called out in Article 5 of your lease agreement. This includes your portion of the taxes and operating expenses as outlined in your lease. We estimate the amount of additional rent at $827.71 per month for 2010.
>
> Effective immediately starting April 1, 2010 Pizza Mart is to pay Seattle Children's Research Institute $4,046.71 per month as your total lease payment. Rent is due on the first of each month, and any payments received later than 5 days after the due date will result in a 5% late charge as called out in article 4.2 of you[r] lease agreement.

Sandhu did not pay $4,046.71 on April 1. Instead, on April 23, Sandhu paid $2,903.00. For the next several months, Sandhu continued to submit late payments of only $2,903.00. And for September, October, and November, Sandhu paid only $2,000.00 per month in rent.

3

On November 26, Children's directed Sandhu to immediately pay "the correct rent amount." The letter states, in pertinent part:

Over the past few months there have been a number of incidents we consider in default of your contract that need to be corrected right away. Please note the following, and take corrective action immediately:

. . . .

— In March of 2010, we informed you of your rental underpayment per letter dated 3/25/10. We have received your financials and verbal request for rent abatement, but at this time we are not able to agree on any reduction in rent. Please start paying the correct rent amount of $4,046.71 immediately, as called out in article 4 of your lease agreement. Failure to do so will put you in default, and we will have no choice but to take further action.

Sandhu did not pay the past-due amount. On December 20 and continuing into 2011, Sandhu paid less than the full amount due for rent.

On June 6, 2011, Children's sent Sandhu a "THREE-DAY NOTICE TO PAY RENT OR VACATE PREMISES."[1] The notice demands Sandhu pay $24,860.36 in back rent and late fees or vacate the premises.[2] Sandhu paid the amount owed of $24,860.36.[3]

---

[1] Boldface omitted.

[2] The notice states, in pertinent part:
YOU ARE HEREBY NOTIFIED, on behalf of Seattle Children's Hospital, as successor landlord to Touchstone 9th and Stewart LLC ("Landlord"), that you must **either** pay the sum of **$24,860.36 or else** vacate the Premises described in that Lease Agreement dated December 23, 2005 as:
**Retail Space #3, 912 Stewart St., Seattle, Washington 98101**
The amount above reflects Base Rent, Additional Rent, Operating Expenses, Late Fees, and Attorneys Fees and Costs due under the Lease through June 1, 2011.

. . . .

FAILURE TO COMPLY WITH THIS NOTICE WILL BE CONSIDERED AN UNLAWFUL DETAINER, AS DEFINED BY RCW 59.12.030(3), AND WILL RESULT IN THE COMMENCEMENT OF EVICTION PROCEEDINGS AGAINST YOU.
(Emphasis in original.)

[3] Correspondence between Sandhu's attorney and Children's attorney indicates Sandhu tendered the check on June 29, 2011.

On February 17, 2015, Sandhu notified Children's of his intent to exercise the option to extend the lease for another five years.

On February 24, Children's filed a declaratory judgment action. Children's alleged it was entitled to terminate the lease. Children's asserted Sandhu was not entitled to exercise the option to extend the lease because he "has been in default beyond applicable cure periods more than two times over a twelve month period." Sandhu filed an answer and counterclaim. The counterclaim alleged, "Tenants are in fact in compliance with the Lease and . . . Tenants are eligible to exercise the option to extend the Lease."

Children's filed a motion for partial summary judgment dismissal of the claim that Sandhu was entitled to exercise the option to extend the lease. Children's submitted a number of documents including a copy of the lease agreement, a spreadsheet documenting the rent payments from October 2008 through September 2011, and copies of the March 25, 2010 and November 26, 2010 letters to Sandhu. Children's also submitted the declaration of Jessica Espinosa, the "primary point of contact for all of Children's tenant and lease functions, including Pizza Mart."

In opposition, Sandhu argued the March 25 and November 26, 2010 letters did not comply with the lease requirements and he was never in default beyond an applicable cure period. Sandhu filed three declarations. The first declaration addresses the sale of alcoholic beverages at Pizza Mart. The second declaration addresses a number of issues including the sale of alcoholic beverages at Pizza Mart and Sandhu's efforts to relocate the business. The third declaration addresses negotiation of the

lease agreement with Touchstone and Sandhu's refusal to comply with Children's request to reduce hours of operation.

The court granted the motion for partial summary judgment. The court ruled Sandhu could not exercise the option to extend the lease and therefore, the lease shall terminate on December 31, 2015. The order states, in pertinent part:

> [T]he Court HEREBY ORDERS that Plaintiff Seattle Children's Hospital's Motion for Partial Summary Judgment is GRANTED. Accordingly, by their defaults Amarjit Sandhu and American Pizza & Pasta, Inc. ("Tenants") cannot exercise the Extension Option, and Tenants' Lease shall terminate no later than December 31, 2015.

The parties stipulated to entry of a final judgment and dismissal of all remaining claims. Sandhu appeals.

## ANALYSIS

Sandhu argues the court erred in ruling on summary judgment that he was not entitled to exercise the option to extend the lease. Sandhu claims he was never "in default beyond any applicable cure period" because the March 25, 2010 and November 26, 2010 letters did not comply with the notice requirements.

We review summary judgment de novo, engaging in the same inquiry as the trial court. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005); Citizens All. for Prop. Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 435, 359 P.3d 753 (2015). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). We consider all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party. Young v. Key Pharms., Inc., 112 Wn.2d 216, 226, 770 P.2d

6

182 (1989). "However, a nonmoving party may not rely on speculation or on argumentative assertions that unresolved factual issues remain." White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997); Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 169, 273 P.3d 965 (2012).

The interpretation of a lease is a question of law that we review de novo. 4105 1st Ave. S. Invs., LLC v. Green Depot WA Pac. Coast, LLC, 179 Wn. App. 777, 784, 321 P.3d 254 (2014). Our primary goal is to ascertain the parties' intent. Berg v. Hudesman, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). We determine intent by focusing on the objective manifestation of the parties in the written contract. Hearst, 154 Wn.2d at 503. "Accordingly, a court considers only what the parties wrote; giving words in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent." Green Depot, 179 Wn. App. at 784; Hearst, 154 Wn.2d at 503-04. A contract "should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions." Colo. Structures, Inc. v. Ins. Co. of the West, 161 Wn.2d 577, 588, 167 P.3d 1125 (2007).[4]

The plain and unambiguous language of the lease agreement precludes Sandhu from exercising the extension option if he "has ever been in default beyond any applicable cure period" more than two times in a 12-month period. Section 51.2 states, in pertinent part:

> Tenant many not exercise its Extension Option if at the time of exercise it is then in default beyond any applicable cure period or if it has ever been in default beyond any applicable cure period more than two (2) times in any twelve (12) month period.[5]

---

[4] Footnote omitted.
[5] Emphasis added.

Section 22.1 addresses the cure period for failure to pay the amount due under the lease agreement. Section 22.1 states, in pertinent part:

> The term "Event of Default" refers to the occurrence of any one (1) or more of the following:
> (a) Failure of tenant to pay when due any sum required to be paid hereunder, provided that Landlord shall not take action based on such default unless such failure is not cured <u>within three (3) days after written notice thereof</u> (the "Monetary Default").[6]

The undisputed record establishes that throughout 2010 and from January through June 2011, Sandhu did not pay the full amount of rent due under the terms of the lease. But Sandhu contends the applicable cure period for failure to pay rent under section 22.1(a) was not triggered because he did not receive "written notice" as specified in the lease. Sandhu claims the March 25 and November 26, 2010 letters were procedurally defective because Children's did not serve the letters using one of the methods specified in the lease agreement.

Section 36.1 of the lease agreement governs service of written notice. Section 36.1 states, in pertinent part:

> Whenever in this Lease it shall be required or permitted that notice or demand be given or served by either party to this Lease to or on the other, such notice or demand shall be given or served in writing and delivered personally, or forwarded by certified or registered mail, postage prepaid, or recognized overnight courier.

The March 25, 2010 letter states Sandhu did not pay the amount due and directs him to pay the full amount due. The record establishes Sandhu did not pay the full amount due and on November 26, 2010, Children's sent Sandhu a letter directing him to immediately "start paying the correct rent amount." In the three declarations Sandhu

---

[6] Emphasis added.

submitted in opposition to partial summary judgment, Sandhu did not dispute that he received the March 25 and November 26, 2010 letters. And at oral argument, his attorney conceded Sandhu received the March 25 and November 26 letters. Sandhu also concedes there is "no evidence" in the record of the method Children's used to deliver the letters. See Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986) ("A nonmoving party in a summary judgment may not rely on speculation[ or] argumentative assertions that unresolved factual issues remain.").

Sandhu also argues the March 25 and November 26 letters were substantively "defective as a matter of law" because the letters did not contain "any demand for payment of a specific amount claimed to be past due" or "any stated cure period." Sandhu cites no provision in the lease that requires a written notice to contain a "demand for payment" or a "stated cure period." In any event, the March 25 and November 26 letters clearly state Sandhu did not pay the full amount of rent under the lease agreement and direct Sandhu to pay the past-due amounts.

The undisputed record establishes that because Sandhu did not pay the rent due within three days of receiving the March or November 2010 letters, he was "in default beyond [an] applicable cure period" more than two times during 2010 and was not eligible to exercise the option to extend the lease.

Sandhu claims the court ignored his argument that the court should use its equitable authority to allow him to exercise the option to extend the lease to avoid a forfeiture of his business. The record does not support his argument.

A trial court has "broad discretionary authority to fashion equitable remedies." Recreational Equip., Inc. v. World Wrapps Nw., Inc., 165 Wn. App. 553, 559, 266 P.3d

924 (2011); Sorenson v. Pyeatt, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006); In re Proceedings of King County for Foreclosure of Liens for Delinquent Real Prop. Taxes for the Years 1985 Through 1988, and Some Prior Years, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). A trial court abuses its discretion only when its decision is "manifestly unreasonable or is exercised on untenable grounds or for untenable reasons." Recreational Equip., 165 Wn. App. at 559.

At the hearing on the motion for summary judgment, the court specifically addressed the argument that the loss of the option to extend the lease would result in a forfeiture. The court did not abuse its discretion in declining to exercise its equitable authority. A lessee is not entitled to equitable relief allowing him to exercise the option to extend the lease where the lessee "consistently paid his rent late, and failed to make timely insurance and tax payments as required by the lease." Lenci v. Owner, 30 Wn. App. 800, 803, 638 P.2d 598 (1981).

Children's requests attorney fees on appeal. The lease agreement states, in pertinent part:

> [I]f either party hereto shall file any action or bring any proceeding against the other party arising out of this Lease or for the declaration of any rights hereunder, the prevailing party in such action shall be entitled to recover from the other party all costs and expenses, including reasonable attorneys' fees incurred by the prevailing party.

We affirm the determination that Sandhu was not entitled to exercise the option to extend the lease and upon compliance with RAP 18.1, award Children's reasonable

No. 74433-0-I/11

attorney fees.[7]

WE CONCUR:

_Beleivelle, J_

_Leach, J_                                    _Dwyer, J._

---

[7] Because we conclude Sandhu was not entitled to exercise the option to extend the lease, we need not address other issues raised on appeal.

11