IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BORTON & SONS, INC., a Washington State corporation, | ) ) ) | No. 36189-6-III |
| Appellant, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| BURBANK PROPERTIES, LLC, a Washington State limited liability company, | ) ) ) ) | |
| Respondent. | ) | |

KORSMO, J. — Equity will permit an option to purchase property to be exercised late in order to avoid a forfeiture when significant improvements have been made to the property. The trial court ruled that respondent Burbank Properties satisfied this condition and allowed the option to be exercised a mere eight days late. We disagree and reverse.

FACTS

Burbank farmed approximately 164 acres it owned in Walla Walla County adjacent to orchards owned by appellant Borton & Sons. Burbank, whose sole owner is Eric Rogers, purchased the property in 2012 after having leased the land for farming since 2000. Burbank used the land to grow early season potatoes. Potatoes deplete the soil of nutrients and are subject to diseases that require strict crop rotation. Potatoes are

grown one year and then the land is given over to other crops for at least one to two years. Historically, Burbank had followed one year of potato planting with two years of grass or hay planting.

After years of depressed potato prices, Burbank faced financial difficulties that threatened its operation. A settlement with one of its lenders required Burbank to sell the potato farm land. However, Burbank's early season potato contracts were a significant component of its operations. Accordingly, it settled on a plan to sell the land at a reduced rate, farm the land on lease terms during the interim, and repurchase the property at a reasonable sum. In essence, the land was being used to secure a short-term loan.

An appraisal valued the land at $1,875,000 and Burbank offered the land for sale for $300,000 less. The following day, desiring to purchase the land that bordered its apple orchards, Borton offered $1,550,000 for the land. The parties rapidly reached an agreement that included the following terms relevant to this appeal: Burbank could repurchase the land for $1,800,000 by December 31, 2018; Burbank had to exercise its repurchase option prior to December 31, 2017, by sending notice to Borton by certified or registered mail; Burbank would lease and farm the land during 2016, 2017, and 2018 at an annual rent of $78,775. Borton required the one year notice because it needed to order trees for its orchard one year in advance of its need for the trees.

In 2017, Burbank harvested a potato crop and thereafter planted Timothy hay that it expected to harvest in 2018 and 2019. At least twice during 2017, Burbank advised

2

Borton representatives that it intended to exercise the repurchase option. On December 28, 2017, Eric Rogers prepared a written notice to Borton that Burbank would exercise its offer to repurchase the land. However, he did not mail the notice until January 4, 2018, and sent it by regular mail instead of by registered mail. Borton received the notice January 8, 2018. Believing the notice ineffectual, Borton wrote Burbank and demanded that it sign a notice that the option was terminated. Burbank responded that it had exercised the option and was planning to close on the property by December 31, 2018.

Borton initiated a declaratory judgment action to determine the status of the purchase option. Burbank answered and counterclaimed for its own declaratory judgment, arguing both that it properly exercised its option and that it was entitled to an equitable grace period to do so. Discovery was rapidly conducted and both parties soon sought summary judgment. The competing motions then were argued to the trial court. Burbank contended that it would lose the value of the Timothy hay and the equity it would obtain by repurchasing the property. Borton argued that Burbank had failed to timely or properly give notice, was unable to perform the purchase, and had not made any improvements justifying equitable relief.

The trial court concluded that an equitable grace period was called for due to the potential loss of hay and equity. Report of Proceedings at 16. An order was entered granting summary judgment for Burbank and authorizing it to close on the property by December 31, 2018. Burbank was also awarded its attorney fees based on the lease

3

agreement. Borton's motion for summary judgment was denied, as was its subsequent motion for reconsideration.

Borton then timely appealed to this court. A panel heard oral argument of this case at Whitman College in Walla Walla.

ANALYSIS

The dispositive issue is whether the trial court erred in its respective summary judgment rulings by awarding equitable relief. We address that issue before briefly turning to the question of attorney fees.

*Equitable Relief*

The traditional interplay of law and equity provides a complicated puzzle on these facts. Principles of summary judgment and contract law inform our approach to this appeal.[1]

---

[1] Although this case comes to us from summary judgment, this author has grave reservations about whether an equitable remedy can be granted in that setting. *But see Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship*, 158 Wn. App. 203, 242 P.3d 1 (2010). Judges do not weigh evidence or decide facts at summary judgment, but a weighing of equities and an assessment of the existence of damages both factor significantly in determining whether an inequitable forfeiture might have occurred. Findings of fact and conclusions of law are required in equity cases just as they are required in nonjury cases at law. CR 52(a)(1). With the exception of *Cornish*, the other cases applying this remedy in Washington did so after a trial. We appreciate that time was of the essence to both parties here and that declaratory judgment actions typically are heard in a brief bench trial, but it is difficult to justify the necessary fact-finding at summary judgment. However, neither party challenged the court's ability to apply the equitable remedy at summary judgment or on appeal.

4

This court reviews declaratory judgment actions the same as it does any other civil case. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 410, 27 P.3d 1149 (2001). Summary judgment rulings are reviewed de novo since an appellate court sits in the same position as the trial court. *Hubbard v. Spokane County*, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002). Summary judgment is proper when, after viewing the evidence in a light most favorable to the opposing party, there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Id.* Summary judgment should be granted if reasonable persons could reach but one conclusion based on all of the evidence. *Id.*

An option contract is "a complete, valid and binding agreement" to which general contract principles apply. *Bennett Veneer Factors, Inc. v. Brewer*, 73 Wn.2d 849, 853, 441 P.2d 128 (1968). "In applying these general contract principles, our primary goal in interpreting the option contract is to ascertain the parties' mutual intent." *Chevalier v. Woempner*, 172 Wn. App. 467, 476, 290 P.3d 1031 (2012). Under the "objective manifestation" theory of contracts, we determine the parties' intent by focusing on the objective manifestations expressed in their contract rather than focusing on unexpressed subjective intentions. *Hearst Commc'n, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Thus, courts will "impute an intention corresponding to the reasonable meaning of the words used" in the contract. *Id.* The parties' subjective intent

5

"is generally irrelevant if the intent can be determined from the actual words used" in the contract. *Id.* at 504. Courts will interpret what was "written instead of what was intended to be written." *Id.* "Accordingly, we give language in the option contract its ordinary, usual, and popular meaning unless the contract clearly demonstrates a contrary intent." *Woempner*, 172 Wn. App. at 476. Ambiguities in a contract typically[2] are construed against the drafter. *Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 135, 677 P.2d 125 (1984).

The option holder may exercise an option by complying with the terms of acceptance set forth in the option agreement. *Whitworth v. Enitai Lumber Co.*, 36 Wn.2d 767, 770, 220 P.2d 328 (1950). If the option is exercised unconditionally in accordance with the terms of the contract, the seller must sell the property in accordance with the terms of the option. *Id.* If the option is not exercised within the time or manner specified, all rights under the contract, along with any consideration given, are forfeited. *Id.* at 770-71. A court may order specific performance of the contract if the option is properly exercised and the seller refuses to convey the property. 3 ERIC MILLS HOLMES, CORBIN ON CONTRACTS § 11.13, at 570 (rev. ed. 1996). The terms of an option contract

---

[2] However, an ambiguous contract will not be construed against the drafter when the intent of the parties is clearly expressed in the record. *See Forest Mktg. Enters. v. Dep't of Nat. Res.*, 125 Wn. App. 126, 132-33, 104 P.3d 40 (2005).

are to be strictly construed and, generally, time is of the essence. *Pardee v. Jolly*, 163
Wn.2d 558, 572, 182 P.3d 967 (2008).

On the basis of this hornbook law, Borton correctly claims that it should have
prevailed at summary judgment because Burbank did not exercise the option at the proper
time and in the proper manner. However, Washington recognizes that in some instances
equity will excuse the untimely exercise of an option to purchase real estate. An
equitable remedy is an extraordinary, not ordinary, form of relief. *Sorenson v. Pyeatt*,
158 Wn.2d 523, 531, 146 P.3d 1172 (2006). A court will grant equitable relief only
when there is a showing that a party is entitled to a remedy and the remedy at law is
inadequate. *Orwick v. City of Seattle*, 103 Wn.2d 249, 252, 692 P.2d 793 (1984).
Whether a party is entitled to equitable relief "is in large part a matter addressed to the
discretion of the trial court, with discretion to be exercised in light of the facts and
circumstances of the particular case." *Heckman Motors, Inc. v. Gunn*, 73 Wn. App. 84,
88, 867 P.2d 683 (1994).

Burbank argues that it is entitled to equitable relief in order to avoid an inequitable
forfeiture. Washington recognizes that equitable relief may be warranted in limited
circumstances where an inequitable forfeiture would otherwise result. *Wharf Rest., Inc.
v. Port of Seattle*, 24 Wn. App. 601, 611, 605 P.2d 334 (1979). This is because
forfeitures "are not favored in law and are never enforced in equity unless the right
thereto is so clear as to permit no denial." *Pardee*, 163 Wn.2d at 574. When the holder

7

of an option makes *valuable permanent improvements* to the property with the intention

to give its notice to exercise or extend the option, but then fails to timely give such

notice, an equitable period of grace may be appropriate. *Wharf*, 24 Wn. App. at 611

(emphasis added) (citing 1 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 35, at 146-47

(1963)). *Wharf* astutely noted:

> The courts which have considered this problem have not found the
> solution simple. On the one hand is equity's abhorrence of a forfeiture. On
> the other hand is the general reluctance of courts to relieve a party from its
> own negligent failure to timely exercise an option, when to do so might
> tend to introduce instability into business transactions and disregard
> commercial realities.

*Id*. at 610.

> A forfeiture is:

> 1. The divestiture of property without compensation. 2. The loss of a right,
> privilege, or property because of a crime, breach of obligation, or neglect of
> duty. . . . 3. A destruction or deprivation of some estate or right because of
> the failure to perform some contractual obligation or condition.

BLACK'S LAW DICTIONARY 765 (10th ed. 2014).

Burbank argues that it did not have to make a permanent improvement to the land

in order to seek relief in equity and that it would constitute an inequitable forfeiture to

forego the value it would have gained by selling the property at market value in 2016 and

the value of the hay it had planted but could not harvest in 2019. We disagree with his

first two arguments and conclude the other was unproved.

Planting an annual crop as one has been doing for years does not constitute a permanent improvement in the land. Burbank has provided no authority to the contrary and tacitly seems to agree by, instead, arguing it had no need to establish permanent improvement. We disagree. All four of the Washington cases on this topic begin with, and continue to rely on, *Wharf*. And *Wharf* was very clear in its reliance on Professor Corbin's hornbook that the only cases in which equity might relieve a party from its negligent mistake was when "he had made valuable permanent improvements with intention to give the notice." 24 Wn. App. at 611 (quoting *Corbin*).

The leaseholder in *Wharf* had an agreement with Port of Seattle and had exercised options to renew its prior lease agreements. *Id*. at 603. In 1977, after 25 years as leaseholder, Wharf inadvertently failed to exercise its option and had to sue to regain its lease after Port of Seattle found a new lessee. *Id*. at 604. After a trial, the court awarded an equitable grace period and ordered specific performance of the option to renew. *Id.* at 604-05. The court found that Wharf had made permanent improvements to the property "with the intention of exercising its option and remaining on the premises." *Id.* at 612. On appeal, Division One of this Court held that equitable relief period was proper under the special circumstances. *Id.* at 609. It summarized those circumstances: (1) failure to give notice was inadvertent, (2) an inequitable forfeiture would result, (3) the lessor had not changed its position in reliance on the failure to timely exercise the option, (4) the lease was long-term, having existed 25 years, and (5) there was no undue delay. *Id*. at

9

612-13. There was evidence that the restaurant was making improvements at the very time the option was supposed to be exercised. *Id*. at 612.

The cases following *Wharf* similarly have involved significant levels of permanent improvements. In *Heckman*, the parties had jointly cleared land and built a building to house an automobile dealership. 73 Wn. App. at 85.[3] Like *Wharf*, the *Heckman* court relied on the same passage from *Corbin* indicating that equity stepped in only when a substantial permanent improvement might be forfeited. *Id*. at 87.

Substantial permanent improvements also were at issue in *Pardee*. There, the trial court found that the plaintiff who had failed to timely exercise its option had put in 2,500 hours of work and spent $20,669.58 for repairs in order to build up equity as collateral for purchasing the property. 163 Wn.2d at 576. The court considered these figures "a significant forfeiture." *Id*. Since the trial court erroneously had granted relief on a different basis, the Supreme Court reversed and remanded for the trial court to consider whether plaintiff was entitled to an equitable grace period in which to exercise the option. *Id*. at 576-77.

The final case is *Cornish*. Cornish College entered into an agreement to sublease a portion of a six-story building with 1000 Virginia Ltd. that included an option to

---

[3] The lessee failed to timely exercise its option at the end of the five year period and the trial court declined to grant an equitable extension as both parties had significantly contributed to the development. 73 Wn. App. at 86, 88.

purchase the building and the land. 158 Wn. App. at 212. Cornish renovated a portion of the property. *Id.* at 213. The superior court determined that Cornish would forfeit approximately $600,000 if the option were not exercised. *Id.* at 219. The court then awarded an equitable grace period and granted specific performance. *Id.* at 214. On appeal, Division One of this court upheld the equitable relief. *Id.* at 219.

In all four of these instances, the option holder had expended significant funds making permanent improvements to the land it hoped to purchase. Here, Burbank simply continued its normal farming operation in expectation that it would continue to work the land. This is not the significant investment in the property that Professor Corbin viewed as the foundation for seeking equitable relief.

Even if Burbank is correct that significant permanent improvements were not necessary in order to obtain equitable relief, it still failed to show than an inequitable forfeiture occurred because it did not demonstrate that it would lose any significant value. It cites first to the fact that the land was sold for $300,000 below its market value and that it could have realized that sum if it had sold the land for fair market value in 2016. Even assuming that it could have realized full value from a forced sale in 2016, Burbank has not argued, and has not demonstrated, that it could have sold the land for any greater sum and still obtained an option to repurchase. The discounted sale price was the cost of the option in order to find someone willing to invest in the property for the short term.

The cost of an option is not a component of an inequitable forfeiture. On point here is *Pardee*. There the option holder paid $16,000 to obtain the purchase option. In its assessment of the forfeiture possibility, the court excluded the option cost, noting that it was "an acceptable result for the termination of an option." 163 Wn.2d at 576. While the potential $300,000 discount here is a significant figure, it was the cost of enticing a fellow farmer to become an investor. Both parties wanted the land, and both were willing to enter into this deal in the hopes that they would ultimately own it. The discounted sale price was not a forfeiture.

The remaining possibility is the value of the second year of the hay crop. No evidence was produced suggesting the potential value of this crop in 2019 despite the fact that Burbank had planted hay on the property in earlier years and should have had records from which to suggest a value. Whether there was any profit to be had from the hay is simply unknown.

Burbank did not establish that it suffered an inequitable forfeiture. There was no relevant evidence before the trial court to suggest otherwise. Accordingly, the court had no basis for finding that an inequitable forfeiture would occur that required the late exercise of the purchase option.

No. 36189-6-III
*Borton & Sons, Inc. v. Burbank Prop., LLC*

*Attorney Fees*

The trial court awarded Burbank its attorney fees in the trial court under the terms of the lease agreement. Burbank seeks to defend that award here and both parties seek attorney fees on appeal.

Because we reverse the trial court, we also reverse the superior court fee award. Attorney fees are available on appeal when there is a contractual or statutory basis for doing so. RAP 18.1(a). As prevailing party, we award Borton its attorney fees under the lease agreement subject to timely compliance with RAP 18.1(d).

Reversed.

Korsmo, J.

I CONCUR:

Lawrence, Berrey, C.J.

13

No. 36189-6-III

LAWRENCE-BERREY, C.J. (concurring in part) — A trial court may grant equitable relief on summary judgment. But here, the facts do not warrant equitable relief. For these reasons, I write separately.

The parties invited the trial court to grant or deny equitable relief on summary judgment. The parties knew the facts, put those facts in front of the trial court, and, as their right, chose to forego the expense and delay of a trial. "Waiver is the intentional and voluntary relinquishment of a known right; it may be either express or implied." *Doe v. Gonzaga Univ.*, 143 Wn.2d 687, 711, 24 P.3d 390 (2001), *rev'd on other grounds by* 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). "To constitute implied waiver, there must be unequivocal acts or conduct evidencing an intent to waive; intent will not be inferred from doubtful or ambiguous factors." *Id.* Both parties impliedly waived their right to a trial by requesting the trial court to decide the appropriateness of an equitable remedy on summary judgment. At a minimum, both parties invited the error, and it would be improper for us to review it. *See In re Det. of Rushton*, 190 Wn. App. 358, 372, 359 P.3d 935 (2015) (An appellate court will not review a trial court error if the party requesting review helped create the error.).

At the outset, it is important to clarify the appropriate standard of review. Our jurisprudence is inconsistent on the appropriate standard when reviewing a trial court's discretionary decision on summary judgment. Relying on *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998), we have held that a de novo standard of review applies when reviewing a trial court's discretionary decision to grant or deny equitable relief on summary judgment. *See Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App. 203, 215-16, 242 P.3d 1 (2010). More recently, our Supreme Court unanimously held that abuse of discretion is the appropriate standard when reviewing a trial court's discretionary decision on summary judgment. *Keck v. Collins*, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015); *id.* at 375 (González, J., concurring) (trial court abused its discretion when striking an untimely affidavit opposing summary judgment). Because the granting of equitable remedies is the province of trial courts, not appellate courts, abuse of discretion is the appropriate standard of review here.

Having addressed the procedural issues, I now address why my vote is against Burbank Properties, LLC (Burbank) and for Borton & Sons, Inc. (Borton).

An equitable extension of time to purchase land may be warranted where an inequitable forfeiture would otherwise result. *Wharf Rest., Inc. v. Port of Seattle*, 24 Wn. App. 601, 612-13, 605 P.2d 334 (1979); *Cornish Coll.*, 158 Wn. App. at 218. Here, Burbank has failed to establish that equitable relief is warranted because it has failed to establish that the forfeiture would be inequitable.

Burbank's lender sued Burbank and its owner for defaulting on a loan agreement. The lender agreed to settle in exchange for Burbank selling the farm to generate short-term cash. But Burbank wanted to keep the farm. It found a way to do both.

Burbank agreed to sell the farm to Borton, and Borton agreed to lease the farm back to Burbank for three years and to grant Burbank an option to repurchase it. A lease with an option to purchase is an encumbrance against property that reduces its value to a purchaser. To induce Borton into the encumbrance, Burbank had to give Borton a deal. Burbank sold its farm to Borton for approximately 15 percent less than fair market value. Burbank agreed to the deal, which was necessary to resolve its lender's lawsuit against it and its owner. There was nothing inequitable about Burbank receiving 15 percent less than fair market value for the encumbered farm.

"The goal of equity is to do substantial justice. Equity exists to protect the interests of deserving parties from the 'harshness of strict legal rules.'" *Columbia Cmty. Bank v. Newman Park*, 177 Wn.2d 566, 569, 304 P.3d 472 (2013) (internal quotation marks omitted) (quoting *Rodriguez v. Dep't of Labor & Indus.*, 85 Wn.2d 949, 953, 540 P.2d 1359 (1975)). But what seems substantially just to one party often seems substantially unjust to the other. It is, therefore, reasonable to *require* the party seeking equity to first establish that an inequity has occurred or will occur. In these types of cases, a party requesting an equitable grace period will seek to establish that forfeiture will result in an unjust loss to it and an unjust benefit to the opposing party.

Burbank argued to the trial court that it would suffer an unjust loss and Borton would receive an unjust benefit if Borton was permitted to retain the farm it purchased at a discount. But as explained above, there was nothing unjust about Borton acquiring the encumbered farm at a discount. Burbank has failed to show that the forfeiture would be inequitable. The trial court, therefore, abused its discretion by granting Burbank an equitable remedy.

_____
Lawrence-Berrey, C.J.

No. 36189-6-III

FEARING, J. (dissenting) — For a civil practitioner, this appeal presents absorbing questions entailing the overlay of summary judgment jurisprudence, appellate review, and equity. Burbank Properties, LLC (Burbank Properties) seeks a grace period by which to exercise an option to purchase farmland owned by Borton & Sons, Inc. (Borton). In the superior court, both parties filed summary judgment motions. The superior court granted Burbank Properties' motion and afforded it an equitable grace period to exercise the right to purchase despite its failure to send timely notice to Borton. The granting of summary judgment when a party invokes equity conflicts with legal principles. In turn, principles of appellate review clash with our evaluation of a summary judgment order granted in equity.

As already mentioned, without a trial and on summary judgment, the superior court issued equitable relief to Burbank Properties. When reviewing a summary judgment motion, a trial court or appellate court must not "weigh the evidence." *American Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 676, 292 P.3d 128 (2012); *Arreygue v. Lutz*, 116 Wn. App. 938, 940-41, 69 P.3d 881 (2003). Nevertheless, when a party seeks equitable relief, the court must "weigh and balance the equities of the parties," which inevitably entails weighing numerous facts. *Credit Bureau Corp. v. Beckstead*, 63 Wn.2d 183, 187, 385 P.2d 864 (1963).

No. 36189-6-III
*Borton & Sons, Inc. v. Burbank Properties, LLC* (dissent)

On appeal, this court reverses the superior court's ruling and grants Borton summary judgment dismissing as a matter of law Burbank Properties' request for equitable relief. The lead opinion refuses to remand for a trial. Our state high court has held that a reviewing court cannot weigh the preponderance of conflicting oral evidence when considering equity cases. *Darnell v. Noel*, 34 Wn.2d 428, 431, 208 P.2d 1194 (1949). Summary judgment declaration testimony equates to oral testimony at trial.

In *Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn. App. 203, 242 P.3d 1 (2010), this court affirmed a summary judgment ruling by the superior court that granted the tenant a grace period in which to exercise an option to purchase despite late notice. This court noted that, due to the discretionary nature of decisions issued in equity, granting equitable relief on summary judgment may be inappropriate in many cases. The *Cornish College* court, nonetheless, affirmed the summary judgment order while characterizing the evidence as strongly supporting an equitable grace period. Like the lead opinion, I question the suitability of granting summary judgment in an equity case.

Despite the anomalous manner in which the parties and the respective courts have handled this suit in equity, I would not remand for trial since both parties waived the right to demand a trial. I would further rule that the superior court committed no error and affirm its summary judgment order favoring Burbank Properties.

2

No. 36189-6-III
*Borton & Sons, Inc. v. Burbank Properties, LLC* (dissent)


Neither party before the superior court argued that, assuming the court denied its motion for summary judgment, the court should also deny the opposing party's motion because of a dispute of fact or that weighing of equitable factors always demands a trial. To the contrary, at page three of its opening summary judgment motion memorandum, Borton wrote: "In the present case, there are no disputed material facts, and both parties simply disagree on the legal effect of Burbank's admitted late exercise of its option to purchase." Clerk's Papers (CP) at 59. In a motion for reconsideration after the superior court granted Burbank Properties' motion, Borton never suggested that the superior court deny each party's motion or conduct a trial.

In its opening appellate brief, Borton argues for the first time that, since the superior court denied its summary judgment motion, the superior court should have at least denied Burbank Properties' summary judgment motion. This contention comes too late.

Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates

3

appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that it had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50 (2013); *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). I conclude that both parties waived any requirement that the superior court conduct a trial before weighing the evidence and the equities. In fairness to the trial court, this court should not reverse its ruling on a ground never presented it except in rare circumstances.

This appellate court must next determine the standard of review of the trial court's decision to exercise its equitable authority, a risky determination because of the anomalous nature of a summary judgment in a suit in equity. On appeal, Burbank Properties, on the one hand, argues that this court should defer to the superior court's ruling. Generally, we employ an abuse of discretion standard of review for a trial court's exercise of equitable authority. *Emerick v. Cardiac Study Center, Inc.*, 189 Wn. App. 711, 730, 357 P.3d 696 (2015); *Recreational Equipment, Inc. v. World Wrapps Northwest, Inc.*, 165 Wn. App. 553, 559, 266 P.3d 924 (2011). On the other hand, Borton asks that we review the trial court's ruling de novo. After all, we review summary judgment orders de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

I would avoid the question of the standard of review in addition to the query about the wisdom of granting summary judgment in an equitable suit. Regardless of whether

this court defers to the superior court or weighs anew the evidence, I would affirm the

superior court.

I move now to the merits. The lease between Burbank Properties and Borton

reads, in relevant part:

SECTION EIGHT OPTION TO PURCHASE

In consideration of Lessee agreeing to sell the property to Lessor and to execute this Lease, Lessor hereby gives and grants to the Lessee an option to purchase the property for the sum of One Million Eight Hundred Thousand and NO/100 DOLLARS ($1,800,000.00) which shall be paid on closing. *Lessee may exercise its option to purchase the Property at any time prior to December 31, 2017.* Lessee's election to exercise this option must be evidenced by a *written notice addressed to Lessor, sent by registered or certified mail to Lessor to Lessor's last known address.* If the option is timely exercised, the term of the Lease shall be extended until closing.
. . . .
Closing shall occur no later than December 31, 2018. . . .

CP at 12-13. Burbank Properties prepared its notice to exercise the option on December

27, but due to inadvertence did not mail the notice until January 4.

SECTION TEN DEFAULT

. . . Termination and forfeiture of the lease shall not result if within thirty days of the receipt of such notice, Lessee has corrected the default or breach, or has taken action reasonably likely to affect such correction within a reasonable time. If any rent shall be due and unpaid, or if default shall be made in any of the covenants here contained, or should the Lessee fail to pay any of the obligations herein mentioned, the Lessor or his attorneys shall give the Lessee proper written notices, commence with lawful eviction, and have all persons and property removed therefrom as provided in the Landlord-Tenant Act (RCW 59.18).

5

CP at 14.

#### SECTION THIRTEEN TIME OF THE ESSENCE

It is specifically declared and agreed that time is of the essence of this lease agreement.

CP at 15.

This appeal raises important policy questions about parties' freedom to contract and the court's role in upholding contract provisions or modifying contract terms to serve fairness. On the one hand looms equity's abhorrence of a forfeiture. *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wn. App. 601, 611, 605 P.2d 334 (1979). Courts wish not to forfeit one's rights when one inadvertently makes a mistake and a forfeiture would cause one hardship and no harm to the other contracting party. *Bekins Moving & Storage Co. v. Prudential Insurance Co.*, 176 Cal. App. 3d 245, 251-52, 221 Cal. Rptr. 738 (1985). If there is no harm, why call a foul?

On the other hand, the law favors definiteness of contracts. *United Properties Co. v. Walgreen Properties, Inc.*, 2003-NMCA-140, 134 N.M. 725, 82 P.3d 535, 538-39. A court should not interfere with the bargain reached by the parties. *United Properties Co. v. Walgreen Properties, Inc.*, 82 P.3d at 539. Courts may not rewrite obligations that the parties have freely bargained for themselves. *United Properties Co. v. Walgreen Properties, Inc.*, 82 P.3d at 539 (2003). Equity jurisdiction has never given the judiciary a roving commission to do whatever it wishes in the name of fairness or public welfare.

6

No. 36189-6-III
*Borton & Sons, Inc. v. Burbank Properties, LLC* (dissent)


*United Properties Co. v. Walgreen Properties, Inc.*, 82 P.3d at 541 (2003). The decision

of which of two profit-seeking parties is more deserving to prevail is not within the

province of the courts. *United Properties Co. v. Walgreen Properties, Inc.*, 82 P.3d at

544 (2003).

A majority of courts that have dealt with the issue on appeal conclude that special

circumstances may warrant a court in granting equitable relief against a lessee's failure or

delay in giving notice to renew an option in its lease. *Wharf Restaurant, Inc. v. Port of

Seattle*, 24 Wn. App. at 610-11 (1979); 49 AM. JUR. 2D *Landlord and Tenant* § 154

(2018). Washington courts apply the same rules with regard to an option to renew a lease

and an option to purchase the property. *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wn.

App. 601 (1979); *Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn.

App. 203 (2010).

Washington law follows the rule allowing some relief from strictly applying

contract terms. Forfeitures are not favored in law and are never enforced in equity unless

the right thereto is so clear as to permit no denial. *Hyrkas v. Knight*, 64 Wn.2d 733, 734,

393 P.2d 943 (1964). In order to avoid the harshness of forfeitures and the hardship that

often results from strict enforcement of contract terms, courts frequently grant a period of

grace to a purchaser before a forfeiture will be decreed. *Pardee v. Jolly*, 163 Wn.2d 558,

574, 182 P.3d 967 (2008). Whether a grace period is warranted depends on the equities

in each particular case. *Moeller v. Good Hope Farms, Inc.*, 35 Wn.2d 777, 783, 215 P.2d

7

425 (1950). Whether or not an equitable grace period is appropriate depends on the facts and circumstances of a case, and is largely within the discretion of the trial court. *Pardee v. Jolly*, 163 Wn.2d at 575 (2008); *Heckman Motors, Inc. v. Gunn*, 73 Wn. App. 84, 88, 867 P.2d 683 (1994).

In determining whether to grant a grace period, Washington courts review five factors identified and applied in *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wn. App. 601 (1979). Those elements are:

> (1) the failure to give notice was purely inadvertent, (2) an inequitable forfeiture would have resulted without the equitable relief, (3) the failure to give timely notice did not prejudice or change the position of the other party, (4) the lease was for a long term and (5) there was no undue delay in giving notice.

*Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn. App. at 218 (2010). Not all five of these circumstances need be present in every case in which an equitable grace period is granted. *Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn. App. at 218. Indeed, such an inflexible approach would be inconsistent with the trial court's broad discretion to fashion equitable remedies. *Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn. App. at 218.

Borton relies on a passage in *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wn. App. 601 (1979), that cites Professor Corbin in his treatise on the law of contracts. Corbin writes that courts have only granted an equitable graced period in cases wherein the holder of the option made valuable permanent improvements to the property. *Wharf*

*Restaurant, Inc. v. Port of Seattle*, 24 Wn. App. at 611, citing 1 A. Corbin, Corbin on Contracts § 35, at 146-47 (1963). In turn, I recognize that the four Washington decisions, in which courts have granted a grace period, entail the tenant fashioning permanent improvements to the real property. *Pardee v. Jolly*, 163 Wn.2d 558 (2008); *Recreational Equipment, Inc. v. World Wrapps Northwest, Inc.*, 165 Wn. App. 553 (2011); *Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn. App. 203 (2010); *Wharf Restaurant, Inc. v. Port of Seattle*, 24 Wn. App. 601 (1979). I disagree, however, that, based on reference to Professor Corbin and the presence of improvements in the Washington decisions, Washington law always demands valuable permanent improvements as a precondition to an equitable grace period.

I note that the five factors adopted in *Wharf Restaurant, Inc. v. Port of Seattle* do not include the optionee adding significant improvements to the property. Some of the Washington courts discuss the addition of improvements to the land or building when analyzing whether the optionee fulfills element two of the test, an inequitable forfeiture resulting if equity does not intervene. Nevertheless, inequity may result regardless of whether the optionee improves the real property. Also, if my predecessors on this court deemed an improvement as a necessary factor, the prior decisions could have and should have expressly placed the element in the list of factors. If earlier courts deemed valuable improvements to be a qualifier outside the five element factors, the courts would not have discussed improvements within the context of element two.

9

No Washington court has specifically held that substantial permanent improvements to the property is essential to a grace period. Instead Washington courts observe that all five circumstances need not be present in every case in which an equitable grace period is granted. *Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn. App. at 218. Therefore, element two, which sometimes includes substantial improvements, cannot be an indispensable circumstance.

Applying a rigid rule that precludes a grace period under one particular circumstance is anathema to equity. To repeat, whether a grace period is warranted depends on the equities in each particular case. *Moeller v. Good Hope Farms, Inc.*, 35 Wn.2d at 783 (1950). Whether or not an equitable grace period is appropriate depends on the facts and circumstances of a case and is largely within the discretion of the trial court. *Pardee v. Jolly*, 163 Wn.2d at 575 (2008). An inflexible approach would be inconsistent with the trial court's broad discretion to fashion equitable remedies. *Cornish College of the Arts v. 1000 Virginia Ltd. Partnership*, 158 Wn. App. at 218. Thus, the court must review all relevant circumstances, not simply whether the optionee improved the real property. If one factor controlled, the law would hamstring the trial court's discretion.

No case announces any reason behind adopting a rule necessitating an improvement to the land for a grace period. Presumably, such a rule deems expenditures as the only acceptable form of prejudice to the optionee, and the rule does not wish the optionor to receive a windfall by gaining possession of the improvements. But the

10

opposite side of the prejudice coin is lack of prejudice to the optionor. No decision explains why prejudice to the optionee is more important than lack of prejudice to the optionor.

A contractual deadline for the exercise of the option allows the optionor to plan and act based on a firm understanding of whether the optionee will buy the land. Burbank Properties' delay was so short that Borton changed no plans. Instead, Borton wants the rigid application of a rule in order to gain a windfall. Since the common era, grace has superseded the application of rigid rules.

Part performance, an equitable doctrine, includes three elements: (1) delivery and assumption of actual and exclusive possession, (2) payment or tender of consideration, and (3) the making of permanent, substantial and valuable improvements, referable to the contract. *Berg v. Ting*, 125 Wn.2d 544, 556, 886 P.2d 564 (1995). Despite improvements constituting an element, equity does not deem improvements to be a necessary element, if a party fulfills the other two elements. *Berg v. Ting*, 125 Wn.2d at 558 (involving consideration as the missing element). In the context of part performance, equity also wishes the trial court to weigh the particular facts and circumstances of each discrete case rather than apply a rigid, formulaic rules. *Berg v. Ting*, 125 Wn.2d at 557.

Now the facts. One might ponder if exercising the option was so important to Burbank Properties, why Eric Rogers failed to plant in advance numerous prompts and reminders to insure timely exercise of the option. An astute and cautious businessperson

11

would forgo other tasks, mail several notices by certified mail a week or more in advance, and personally deliver the notice days before the option expired on December 31. But people make mistakes and equity sometimes aids the forgetful when the forgetfulness does not harm another.

I agree with Borton that Burbank Properties installed no substantial improvements. Still it planted a hay crop and would not benefit from the crop's presence in 2019 if it could not exercise the option. More importantly, Burbank Properties suffers other inequities as a result of forfeiture of the option. Burbank Properties loses equity of $75,000 in the land. It loses land it has farmed since 2000. At the same time, Borton reaps a profit of at least $250,000 if Burbank Properties buys the land.

The other four factors weigh heavily in favor of Burbank Properties. Burbank Properties had a long term lease with Borton. Eric Rogers, or Burbank Properties, repeatedly told Borton that Burbank Properties intended to exercise the option. The failure to send notice by December 31 was inadvertent. Eric Rogers prepared the notice on December 28 and then left it on his desk.

Burbank Properties exercised the option only four days late. It mailed the notice on January 4, rather than December 31. Borton took no steps between December 31 and January 4 as a result of an untimely exercise of the option. Borton did not even take any steps by January 8, the day of receipt of the notice. Borton suffered no iota, scintilla, mite, or tittle of prejudice from the late exercise.

12

I note that the option paragraph in the Borton-Burbank Properties lease does not indicate whether Burbank Properties needed to mail the notice by December 31 or whether Borton needed to receive the notice by December 31. Generally, notice by mail is considered complete on mailing, not on receipt. 58 AM. JUR. 2D *Notice* § 29 (2012). Let us assume that Burbank Properties mailed the notice of exercise on December 31, but, because of delays in the mail, Borton did not receive the notice until January 8. Borton would have been in no different position than that which actually occurred.

This appeal also holds a unique factor. Closing of the sale was not to occur until December 2018. A delayed closing bolsters the lack of any prejudice to Borton.

On appeal, Borton also argues that Burbank Properties provided no evidence that it could pay the purchase price at closing. Nevertheless, closing would occur one year later. Borton provided no evidence or analysis as to Burbank Properties being unable to purchase at that later date.

I DISSENT:

_____
Fearing, J.

13